jury: Franklin Fire Ins. Co. v. Updegraff, 7 Wright 350; 5 Id 162; 6 Id. 168; 11 Id. 205.

The seventh assignment was not pressed, and has no merit. We discover no error in the bills of exception, nor in the charge of the learned judge.

Judgment affirmed in each case.

Agnew, J., dissented.

## The Danville, Hazleton and Wilkesbarre Railroad Co. versus The Commonwealth.

1. The rights, &c., enjoyed by the Sunbury and Erie and the Pennsylvania Railroad Companies " for settling and obtaining the right of way," do not include the mode of settling differences between township authorities and a railroad company which had taken possession of a public road.

2. Such settlement and acquisition relates to private property, which under the Constitution cannot be taken by a corporation without compensation.

3. An act gave a railroad company power to construct its railroad on a public road, and provided that if in its construction it should be necessary to change a public road, &c., they should "cause the same to be reconstructed in the most favorable location and in as perfect a manner as the original road." This does not require that the *making* of the new road shall precede the occupying of the old road.

4. The legislature may authorize building a railroad on a public road.

5. A railroad company occupying a portion of a public road not exceeding the extent allowed by law, and obstructing public travel on such portion, is not guilty of nuisance.

January 30th 1873. Before Read, C. J., Agnew, Williams and Mercur, JJ. Sharswood, J., at Nisi Prius.

Certiorari to the Court of Quarter Sessions of *Northumberland county*, of September Term 1872.

On the 1st day of November 1869, The Danville, Hazleton and Wilkesbarre Railroad Company were indicted in the Court of Quarter Sessions of Northumberland county, for nuisance.

The indictment contained two counts :—

The first set out that there was a public highway from a point in another highway, in the township of Rush, in Northumberland county, near the southern end of the bridge over the Susquehanna river, at Danville, to and through Elysburg, in the county aforesaid; that the defendants " dug up and subverted " 1200 yards in length, 30 feet in breadth, and 15 feet in depth, of the highway, and kept it so dug up, &c., whereby it "has been and yet is obstructed, stopped up, narrow and dangerous, so that the citizens of the Commonwealth have been and still are hindered and obstructed in passing," &c.

The second count set out that the defendants dug up, &c., 100

[Danville, &c., Railroad Co. *v.* Commonwealth.]

feet in length, 50 feet in breadth, and 15 feet in depth, of the same highway, and kept and maintained it so dug up, &c., and thereby obstructed the travel of the citizens of the Commonwealth.

By special verdict the jury found that the Act of 15th of April 1859 authorized the incorporation of the Wilkesbarre and Pittston Railroad Company, "to construct a railroad along and near the Susquehanna river and to be constructed as near to it as practicable on the east side of the Susquehanna river from the Lackawanna and Bloomsburg Railroad, above the borough of Pittston, in Luzerne county, along said Susquehanna river to the town of Danville or Sunbury, with the right to cross and recross the Susquehanna river at any point," &c.

That the act further provided that the company might connect with other railroads, and by section 4, should "have all the rights and privileges enjoyed for the settling and obtaining the right of way as now enjoyed by the Sunbury and Erie and Pennsylvania Central Railroad Companies;" * * * and, by section 5, should have "the rights and privileges and be subject to all the instructions of the act regulating railroad companies passed the 19th day of February, A. D. 1849."

They further found that by Act of April 10th 1867, the name of the Wilkesbarre and Pittston Railroad Company was changed to "The Danville, Hazleton and Wilkesbarre Railroad Company."

The company, by the same act, was "authorized to commence the construction of their railroad at any point on the line thereof, and the said company may locate and construct their railroad by the most practicable route their engineers may select, and may cross any other horse and locomotive railroad, at grade or otherwise, or connect therewith."

They further found that, by Act of May 8th 1854, it was provided "that in all cases of difference arising between the Sunbury and Erie Railroad Company and the supervisors of any township relative to any road, causeway or bridge which has been or may be altered or supplied by the said Sunbury and Erie Railroad, the Court of Quarter Sessions in the county of which the same may lie shall appoint three commissioners, who shall examine the matter in dispute, and their decision or that of a majority of them shall be final and conclusive between the parties," &c.

And that by Act of March 20th 1849, supplementary to the act incorporating the Pennsylvania Railroad Company, it was provided that: "Whereas, the legislature by the 5th section of the act passed the 27th day of March 1848, entitled a further supplement to an act to incorporate The Pennsylvania Railroad Company, did provide that if the said railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper expense, in the most favorable location

[Danville, &c., Railroad Co. *v.* Commonwealth.]

and in as perfect a manner as the original road; but there is no provision made for compelling the said company to comply with this law, therefore,

"Be it enacted, That if by the construction of this road by the Pennsylvania Railroad Company, it shall have been or may hereafter be necessary to change the site of any portion of any turnpike or public road, when the necessary time shall have elapsed to have enabled the said railroad company to comply with the provisions of the 5th section of the Act of the 27th of March 1848, requiring them to reconstruct such turnpike or public road, it shall be the duty of the Court of Quarter Sessions of the county in which such turnpike or public road shall be located, upon the petition of the company owing the said turnpike, or of any twelve or more citizens of the township in which the said public road may be, to appoint three competent persons, * * * to view the place where the said turnpike or public road was, and make report to the said court at their next session, whether the said Pennsylvania Railroad Company have complied with their duty in making said turnpike or public road as they are required by the said law to do, and if the said viewers shall report to the said court that the Pennsylvania Railroad Company has complied with the provisions of the said Act of Assembly, and the said report shall be approved by the court, an order shall be made that the costs and expenses of the said view shall be paid by the petitioners; but if the viewers shall report to the said court that the said company has not complied with the provisions of the said Act of Assembly, and the said report shall be approved by the court, the expense thereof shall be paid by the said railroad company; then it shall be the duty of the said court to order and decree that the said turnpike or public road, as the case may be, shall be made, finished and completed as the said Pennsylvania Railroad Company, by the provisions of the 5th section of the Act of 27th of March 1848, were bound to finish and complete the same."

They further found: "That before the passage of any of the said Acts of Assembly and until and at the time of the committing and doing of the acts and things hereinafter mentioned by the said The Danville, Hazleton and Wilkesbarre Railroad Company, there was and from the committing and doing of the said acts and things hereunto there ought to have been and still of right ought to be a common and public highway leading from a point in another public highway in the township of Rush, in the county of Northumberland, near the southern end of the bridge over the North Branch of the river Susquehanna at Danville, to and through Elysburg in the county aforesaid, for all the citizens of this Commonwealth to go, * * * and that the said The Danville, Hazleton and Wilkesbarre Railroad Company located its railroad upon and along a part of the said first-mentioned common

[Danville, &c., Railroad Co. v. Commonwealth.]

and public highway in the said township of Rush and county afore-
said, and afterwards, on the 1st day of July, A. D. 1868, in con-
structing the bed of its said railroad, dug up, &c., that part of the
said common and public highway in the said township of Rush,
upon which it had located its said railroad for 875 yards in length
and in width varying from 1 to 20 feet, and in depth varying from
1 to 15 feet, and constructed its railroad thereupon, and has kept,
&c., the same so dug up, &c., whereby the said highway during
the time aforesaid has been and yet is obstructed, narrow and
dangerous, so that the citizens of this Commonwealth during all
that time have been and still are hindered and obstructed in pass-
ing, &c., and that the said The Danville, Hazleton and Wilkes-
barre Railroad Company did not and have not at any time caused
the said part of the said highway so dug up, &c., and occupied by
its said railroad as aforesaid to be reconstructed either in the most
favorable location or in as perfect a manner as the original road,
and that though the said The Danville, Hazleton and Wilkesbarre
Railroad Company did cause to be constructed a new road leading
around the said part of the said highway so dug up, &c., yet the
said new road was not constructed on the most favorable location,
or in as perfect a manner as the original road, but on the contrary
was very badly located and is steep, narrow and hilly, and in all
these respects much inferior to the original road and unfit for pub-
lic use, and that the said highway continued to be used and is still
used by all the citizens of this Commonwealth to go, &c., though
a part of the same common and public highway was during all
that time greatly narrowed and obstructed by reason of the same
having been dug up and occupied by the bed of the said railroad
of the defendants.   That since the finding of the said inquisition
the said The Danville, Hazleton and Wilkesbarre Railroad Com-
pany has partially widened the said part of the said highway
where the same adjoins the part of the same which was dug up,
&c., and that the road so widened is upon the most favorable loca-
tion for the said road, but was not and is not reconstructed in as
perfect a manner as the original road, but on the contrary is in
some places narrowed and more dangerous than the original road,
and by reason thereof less fit for the public use or travel."

They further found that no proceeding had been had in relation
to the highway under the provisions of the aforementioned acts,
relating to the Sunbury and Erie and the Pennsylvania Railroads.

But whether on the whole matter found, the provisions of the
acts relating to the Sunbury and Erie and the Pennsylvania Rail-
road Company "apply to or affect the Danville, Hazleton and
Wilkesbarre Railroad Company or not, and if they do whether
either of the said last-mentioned acts supersede the proceedings
under this indictment against the said The Danville, Hazleton and
Wilkesbarre Railroad Company for occupying a public highway

[Danville, &c., Railroad Co. v. Commonwealth.]

with their railroad, and whether any proceedings under either of the said mentioned acts are by law necessary before the commencement of such proceedings by indictment, the jurors aforesaid are entirely ignorant, and if * * * it shall appear to the court that the said last two mentioned Acts of the General Assembly apply to the said The Danville, Hazleton and Wilkesbarre Railroad Company, and that they or either of them under the facts found by the jurors as aforesaid supersede these proceedings by indictment, or that proceedings under either of the said last-mentioned acts were by law necessary before the commencement of the proceedings by indictment in this case, or that upon the facts as aforesaid found, the court be of opinion that the defendants are not indictable in manner and form as indicted; then the said jurors say that the defendant is not guilty on the first count of the said indictment." But if the court should be of opinion otherwise, they found the defendants guilty on the first count of the indictment.

The jury further found that the part of the highway narrowed, &c., by having been dug up, &c., by the defendants on the 28th of October 1869, "was in length one hundred feet, and in breadth ten feet, and in depth ten feet, and that the defendants kept, &c., this part of the said public highway thus dug up, &c., for the space of one day, so that the citizens of this Commonwealth during all that time were hindered and obstructed in passing, &c., and that the defendants caused the said part of the said public highway to be dug up and subverted to prevent the passage of citizens and travellers along the same and to compel them to pass along and travel upon the aforesaid new road constructed around the part of the said public road dug up and subverted and occupied by the said railroad as mentioned in the first count of this indictment; but whether upon the whole matter found, &c., the provisions aforesaid relating to the Sunbury and Erie and the Pennsylvania Railroad Companies apply to or affect the defendants, and if they do, whether either of the said last-mentioned Acts of Assembly supersede the proceeding by indictment against the defendants, and if not whether any proceedings under either of the said last-mentioned Acts of Assembly were by law necessary before the commencement of such proceedings by indictment, the jurors are entirely ignorant; and if upon the whole matter aforesaid it should appear to the court that the said Acts of Assembly apply to the defendants, and that they or either of them supersede the proceedings by indictment in this case, or that proceedings under either of the said last-mentioned Acts of Assembly are by law necessary before the commencement of the proceedings by indictment, or that the defendant is not indictable in manner and form as indicted, then the jury say, that the defendant is not guilty on the second count of the said indictment. But if upon the whole matter " the

23 P. F. Smith—3

court be of a contrary opinion, the jury find the defendants guilty on the second count.

The questions in the case were :—

1. Whether the supervisors were not bound to pursue the special remedy provided for the settlement of disputes between supervisors of any township and the company relative to any public road, under the provisions of the acts of incorporation and supplements.

2. Could the Danville, Hazleton and Wilkesbarre Railroad Company be convicted under the indictment for obstructing a public highway without charging that the defendant refused or did not reconstruct a new road in place of the one occupied ?

The court (Rockefeller, P. J.) were of opinion that the provisions of the Acts of Assembly relative to the Sunbury and Erie and Pennsylvania Railroad Companies, mentioned in the special verdict, did not apply to or affect the defendants nor supersede the proceedings by indictment ; and that no proceedings under either of those acts were necessary before the commencement of proceedings by indictment ; and that the provisions of the Acts of Assembly above mentioned did not supersede the proceedings by indictment against the defendants for the things committed on the 8th of October 1869, as found by the special verdict, and that the defendants are " indictable in manner and form as indicted."

The court sentenced the defendants to pay a fine of $10 and the costs, and directed them to abate the nuisance.

The defendants removed the record to the Supreme Court by certiorari, and assigned for error that the court erred :—

1. In deciding that, under the findings of the special verdict, the provisions of the Acts of Assembly mentioned in it did not apply to or affect the defendants, and that they did not supersede under the facts found by the jury these proceedings by indictment, and that no proceedings under either of the said acts were by law necessary before the commencement of these proceedings by indictment.

2. In deciding that under the finding the defendants were indictable under the indictment in this case.

3. In deciding that the provisions of the Acts of Assembly mentioned in the finding did not supersede the proceedings by indictment against the defendants for causing the things committed on the 28th of October 1869, as found by the special verdict, and that the defendants were indictable in manner and form as indicted.

4, 5. In sentencing the defendants to pay a fine of $10 and costs, and directing them to abate the nuisance.

*S. G. Thompson* and *S. P. Wolverton*, for plaintiffs in error.— The company could by law take possession of a public road to

[Danville, &c., Railroad Co. v. Commonwealth.]

construct their railroad upon it, and therefore this act was not a nuisance : Commonwealth *v.* Erie and N. E. R. R., 3 Casey 339. The legislature is presumed to know that the railroad would be an impediment to travel : King *v.* Pease, 4 B. & Ad. 17 ; King *v.* Russell, 6 Barn. & Cress. 566 ; King *v.* Morris, 1 B. & Ad. 441 ; Queen *v.* Scott, 3 Q. B. 543 ; Newburyport Turnpike *v.* E. Railroad, 23 Pick. 326 ; Commonwealth *v.* Wilkinson, 16 Id. 175 ; Commonwealth *v.* Pittsburg, F. W. & Ch. R. R., Pitts. Leg. I., Jan. 2d 1858, Vol. 5, No. 35. A railroad built by authority of law is not a nuisance : Phila. and Trenton R. R. Case, 6 Whart. 25 ; Hickman *v.* Patterson, &c., R. R. Co., 2 Green (N. J.) 75 ; Bordentown and S. Amboy Turnpike *v.* Camden and Amboy Railroad, 2 Harr. 314 ; Davis *v.* The Mayor of New York, 14 N. Y. R. 506 ; Fletcher *v.* Auburn and Syracuse Railroad, 25 Wend. 463 ; Drake *v.* Hudson River Railroad, 7 Barb. 508 ; Hentz *v.* Long Island Railroad, 43 Id. 646 ; Harris *v.* Thompson, 9 Id. 356 ; Milhau *v.* Sharp, 15 Id. 193 ; Stuyvesant *v.* Pearsall, 15 Id. 244 ; Williams *v.* N. Y. Central R. R., 18 Id. 222 ; Harris *v.* Thompson, 9 Id. 350.

The words in the act " to be reconstructed forthwith," do not mean that a new road should be constructed before the company should occupy the old one, but in a reasonable time under the circumstances : Styles Reg. 452, 453. The remedy provided by the act must be pursued : Act of March 31st 1806, sect. 13, 4 Sm. L. 332, 1 Br. Purd. 58, pl. 5 ; Commonwealth *v.* Capp, 12 Wright 53 ; Koch *v.* Williamsport Water Co., 15 P. F. Smith 288 ; Railroad Co. *v.* McLanahan, 9 Id. 23.

The railroad company having occupied the public road in question in pursuance of lawful authority, this prosecution cannot be sustained.

If indictable at all it could only be for not supplying a good road in place of the one occupied, and not in manner and form as indicted.

A specific remedy having been provided, it must be pursued.

*J. W. Comly* (with whom was *G. W. Ziegler*), for the Commonwealth.—If the powers granted to a corporation cannot be exercised without disregarding the restrictions with which they are coupled, they cannot be executed at all : Commonwealth *v.* Erie & N. E. Railroad, 3 Casey 339 ; Queen *v.* Scott, 3 Q. B. 543. The special verdict finds that the railroad is a nuisance as to such a road : Harvey *v.* Lackawanna & Bl. Railroad, 11 Wright 428. The new road should have been made before the old one was closed : Queen *v.* Scott, *supra* ; Queen *v.* Great North. & E. Railway, 9 Q. B. 315. Reconstruction of a new road was matter of proof by defendants on the trial : Commonwealth *v.* Church, 1 Barr 105 ; Chitty's Crim. L. 23 ; 1 Whart. Am. Cr. L., sect. 378.

[Danville, &c., Railroad Co. *v.* Commonwealth.]

The opinion of the court was delivered, July 2d 1873, by

MERCUR, J.—The Wilkesbarre & Pittston Railroad Company (to whose rights the plaintiff succeeded) was incorporated under the Act of 15th April 1859. The fifth section of said act provides, "that this company shall hereby have the rights and privileges and be subject to all the restrictions of the act regulating railroad companies, passed the 19th day of February, A. D. 1849." This language is sufficiently comprehensive to subject it to the general railroad law to which it refers. It is contended, however, by the plaintiff, that inasmuch as the fourth section of said act declares " that said company shall have all the rights and privileges enjoyed, for the settling and obtaining the right of way, as now enjoyed by the Sunbury and Erie and Pennsylvania Central Railroad Companies," that this extends to, and includes, the mode of settling differences between township authorities and a railroad corporation, when the latter has taken possession of a public road. We cannot concur in this construction of the statute. We do not think "settling and obtaining the right of way" was designed to include the rights of the public in a public highway. That language is evidently designed to be restricted to the settlement and acquisition of that private property which, the Constitution says, the legislature shall not invest any corporate body with the privilege of taking for public use, without requiring such corporation to make compensation to the owners thereof, or give adequate security therefor before such property shall be taken. The statutes referred to designate the manner in which the right of way over private property may be acquired by these corporations. The said fourth section of the Act of 15th April 1859 must be held as referring to the right of way over private property only, and not extending to public property. Hence, we discover no error in the first and third assignments. The second assignment presents the important question in the case. The thirteenth section of the Act of 19th February 1849, 2 Br. Purd. Dig. 1221, pl. 39, declares "if any such railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper expense, on the most favorable location and in as perfect a manner as the original road." The plaintiffs' railroad was located between the east bank of the Susquehanna river and Blue Hill. In the construction thereof, along the base of said hill, it became necessary to occupy so much of the public road, for a distance of 875 yards, as to hinder, obstruct and make dangerous the travel over the same. A change of the site of so much of said public road became necessary. Before occupying this road, the plaintiff constructed a new road, in lieu thereof, over the hill, and opened it for public use. This new road, however, was not constructed on the most favorable location, and in as perfect a manner

[Danville, &e., Railroad Co. v. Commonwealth.]

as the original road. It so continued for more than a year after the old road was obstructed, and down to the time of finding this indictment—subsequently, and before the trial, the plaintiff partially widened the public highway along the track of said railroad, upon the most favorable location; but did not reconstruct the same in as perfect a manner as the original road. The defendant contends that this omission by the plaintiff to reconstruct a public road, makes the appropriation of the old road illegal and subjects the company to an indictment therefor. The indictment, therefore, does not charge the plaintiff with neglecting or omitting to reconstruct a road in lieu of the one occupied by the railroad, but with obstructing and stopping up the old public road. The effort is to convict the plaintiff for obstructing the old road by reason of its failing to construct a new one. Can this be done? In support of the affirmative, the case of Reg. v. Scott, 3 Q. B. 858 (43 E. C. L. R.), has been cited. It is true an indictment was there sustained against the engineer and other persons, acting on behalf of the Manchester and Leeds Railway Company, for obstructing a road before constructing a new one in lieu thereof; but that is based upon the language of the statute. After authorizing a railroad corporation to make obstructions in public or private roads for the purpose of their undertaking, the statute expressly declares "*before* any such road shall be so cut through, taken or injured as aforesaid," the company shall cause a good and sufficient road to be set out and made instead thereof. The making of the new road was therefore a condition precedent to the right of the corporation to break ground in the old road. In ruling the case, Lord Denman, C. J., said, "the company have not done what the act legalizes only on a condition which they have not performed." So in Reg. v. The Great North of England Railway Company, 8 Q. B. 314 (58 E. C. L. R.), it was held, in an opinion given by the same chief justice, that a corporation aggregate might be indicted for misfeasance or nonfeasance under the same statute, in not conforming to the powers conferred on the company by Act of Parliament. The language of our statute is entirely different. It nowhere declares that the making of a new road shall precede the taking possession of the old one. It gives an unconditional power to a railroad company to construct its railroad upon a public road, but commands what the company shall thereupon do. The legislature authorizes the original highway to be changed to another form of highway. The Act of February 19th 1849 gives to all railroad corporations, subject to its provisions, the right to take possession of such portions of any public road, as come within the line of its track. When the construction corps strikes a public road, it is not obliged to pause and seek for an agent of the Commonwealth to whom payment must be made, or adequate security be tendered before breaking ground. The statute has provided

[Danville, &c., Railroad Co. v. Commonwealth.]

the character and extent of the compensation which it shall render to the public, consequent upon taking a public road. Legislative wisdom has not said that payment shall precede the taking. The power of the legislature to authorize the building of a railroad upon a public road is indubitable : Phila. & Trenton Railroad Co., 6 Whart. 25 ; Green *v*. Borough of Reading, 9 Watts 382 ; Henry *v*. Pittsburg & Allegheny Bridge Co., 8 W. & S. 85 ; O'Connor *v*. Pittsburg, 6 Harris 189 ; Mercer *et al. v*. Pittsburg, Ft. Wayne & Chicago Railroad Co. *et al.*, 12 Casey 99. To the Commonwealth belongs the franchise of every highway within its limits as a trustee of the public. Every public road therein exists by force only of the Commonwealth's authority. So every railroad has its franchise by grant from the state : O'Connor *v*. Pittsburg, *supra*. As the statute then authorized the plaintiff to appropriate so much of the public road as was necessary for its purposes, and the portion taken did not exceed the width fixed by law, it follows that the taking, in pursuance of law, cannot be a public nuisance : Fletcher *v*. Auburn & Syracuse Railroad, 25 Wend. 463 ; Drake *v*. Hudson River Railroad, 7 Barb. 508 ; Harris *v*. Thompson, 9 Id. 350. In this case the court well said, "it is a legal solecism to call that a public nuisance which is maintained by public authority." In People *v*. Law *et al.*, 34 Barb. 502, the court said that taking a street or highway for the purpose of a railroad is taking it for public use, is settled by repeated adjudications and can no longer be regarded as an open question. A structure authorized by the legislature cannot be a public nuisance. A public nuisance must be occasioned by acts done in violation of law. A work which is authorized by law cannot be a nuisance : Rex *v*. Pease, 4 Barn. & Ad. 17 ; Commonwealth *ex rel.* Attorney-General *v*. Pittsburg, Fort Wayne & Chicago Railroad Co., Pittsburg Legal Journal, January 2d 1858, Vol. 5, No. 35. We think, therefore, the learned judge erred in holding the conviction good under the first count of the indictment. The second count was not pressed, besides the act therein charged appears to have been done within the limits which the plaintiff was authorized to appropriate to its use. The second assignment is therefore sustained. This necessarily sustains the fourth and fifth assignments. Whether the plaintiff would have been liable to an indictment, if charged with not reconstructing the road in a reasonable time, does not arise under this indictment, and we therefore do not express any opinion in regard to it. We hold this conviction is contrary to the whole spirit of the statute which authorizes a railroad company to lay its tracks upon a public highway, therefore

  Judgment reversed and judgment entered in favor of the defendant below.