# THE COMMONWEALTH v. THE PENN. R. CO.

ERROR TO THE COURT OF QUARTER SESSIONS OF WARREN
COUNTY.

Argued May 26, 1887—Decided January 3, 1888.

A railroad company, whose charter provided that if said company
" should find it necessary to change the site of any turnpike or public
road, they should cause the same to be reconstructed forthwith, at their
own expense, on the most favorable location and in as perfect a manner
as the original road," occupied a portion of a public highway with a
wall and an embankment on which to support its own road-bed, and
subsequently before its railroad was completed and opened for travel,
by statutory authority leased its franchises and privileges to another
railroad company, who completed and was operating the same. No
reconstruction of the public highway, obstructed by said wall and
embankment, having been made: *Held*

1. That the rights and franchises in the hands of the lessees were of the
same public character as if they had remained in the hands of the
lessors, and that the lessees, in the acceptance and in the exercise
thereof under the charter of the lessors, must be taken to have assumed
the correspondent duties and obligations.

2. That, as the duty to reconstruct the public highway was a public duty,
the disregard and violation of it was a public wrong, and the proper
subject of an indictment, following P. V. & C. Ry. Co. v. Common-
wealth, 101 Pa. 192.

Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK,
JJ.; MERCUR, C. J., and PAXSON, J., absent.

No. 50 July Term 1887, Sup. Ct.; court below, No. 20
March Term 1886, Q. S.

Upon a presentment of the grand jury of Warren county,
an indictment was found at March Term 1886, against the
Pennsylvania Railroad Company, said indictment containing
two counts; the first, charging the defendant with a public
nuisance in obstructing a public highway, and the second,
with neglecting to construct a new road upon the most favorable
location, as required by statute.

At the trial on March 8, 1887, it was shown that at June

Term 1833, a public road, a portion of which runs along the south bank of the Allegheny river, east of Warren, in Mead township, was finally confirmed and ordered to be opened to the width of 50 feet.  At the point at which the railroad was afterwards constructed, the road was not actually cleared until about 1840 or 1841, when it was chopped out and from that time worked as much as the travel required.

The Sunbury & Erie R. Co. was incorporated by act of April 3, 1837, P. L. 170, § 14 of which provided:

The said railroad shall be so constructed as not to impede or obstruct the free use and passage of any public road or roads which may cross or enter the same; in all cases where the said railroad may cross, or in any manner interfere with any existing public road, canal, or slackwater navigation, the said company shall make or cause to be made, as soon as conveniently may be, a good and sufficient causeway or causeways, bridge or bridges, to enable all persons passing or traveling such public road, canal, or slackwater navigation, to cross and pass said railroad, which bridge, or causeway or causeways, shall be made and maintained by said company, and the sufficiency of the same shall be judged by the supervisor or supervisors of the proper township; and if the company shall neglect or refuse to keep such causeway or causeways in good repair, they shall be liable to a penalty of ten dollars, for every day the same shall be so neglected or refused to be repaired, to be recovered by the supervisors of the township, with costs, for the use of the township, as debts of like amount are by law recoverable, and shall, moreover, be liable to all actions at the suit of any person who may be aggrieved thereby.

By § 5 of the supplementary act of March 27, 1852, P. L. 186, it was provided:

That if said railroad company shall find it necessary to change the site of any portion of any turnpike, or public road, they shall cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road; provided, that the damages incurred in changing the location of any road, authorized by this section, shall be ascertained and paid by said company, in the same manner as is provided for in regard to the location and construction of their own road.

And see § 7, act of May 8, 1854, P. L. 647.

In 1859 and 1860, there was a traveled track in said public highway, about 18 or 20 feet wide along the bank of the river, with room enough between the track and the river for four or five sticks of timber laid side by side. On the south side of the road was the hillside, which was partly within the 50 feet right of way; but there was room for teams to pass and for ditches, without working the bank down, though this could easily be done if the travel should at any time require a widening of the traveled track.

In 1860, the said railroad company took and occupied a portion of the public road next the hillside at the point mentioned, for a distance of about 400 feet in length, constructing a retaining wall within the right of way of the public road and in part within the traveled track. Within this wall, upon an embankment 40 or 50 feet high, was placed the road-bed of the railroad. After the construction of the embankment and wall, there was left a strip of level ground, part of the original right of way of the road between the wall and the river, varying in width from 14 to 20 feet. No new road was ever constructed, and the public travel has been confined to the narrow passage between the wall and the river.

In arranging for the construction of this retaining wall and embankment, the engineers of the railroad company met the road commissioners of the township on the ground; Mr. Rogers, one of said commissioners, called them together: " Mr. Behring (the engineer) projected a plan by which we were to change part of the road and build a retaining wall to keep the embankment from encroaching on the road, and they assented to it; Mr. Rogers was to see that the work was carried out according to the plan ; we did not deviate from it ; I met him often ; he used to go over the work every day more or less ; we often met him in that vicinity, and the work was finished in accordance with that plan, and the wall was placed where I had marked it out at the time."

By the act of March 7, 1861, P. L. 94, inter alia, the name of the said railroad company was changed to the " Philadelphia & Erie Railroad Co.," and in January, 1862, before the completion of the railroad or the opening of it for travel, the latter company, under the authority of certain acts of assembly

recited, leased for the term of 999 years to the Pennsylvania Railroad Co., the whole road, "located, in part constructed, and now being constructed, and to be constructed, and completed from its terminus at Sunbury, in Northumberland county, in the state of Pennsylvania, to its terminus at the harbor of Erie, in the state of Pennsylvania, with all the lands, railways, lines, bridges, fences, rights of way, depots, stations, water stations, station houses, machine shops, and all other buildings, improvements and appurtenances, of every nature whatsoever, held, owned, or which may at any time hereafter be acquired, by said party of the first part, for the purpose of operating and maintaining their said railroad, or for constructing or extending the same, or for the use thereof;" and the defendant company has operated said railroad since it was opened for travel in 1864. There was evidence tending to show that the wall and embankment had been allowed to slip down into the strip of road still left along the river, rendering the passage-way narrower than it was when they were constructed.

The court, WILLIAM D. BROWN, P. J., affirmed a point presented by the defendant company and charged the jury, in accordance therewith, that under the evidence and pleadings there could be no conviction of the defendant of the offences charged in the indictment. After verdict and judgment in favor of the defendant, upon the allocatur of this court the commonwealth took this writ, assigning the said instruction as error.

*Mr. Charles H. Noyes* (with whom was *Mr. George H. Higgins, District Attorney*), for the plaintiff in error:

1. That a corporation may be indicted for nonfeasance—the neglect of a duty it owes to the public, by reason of which the public suffers an inconvenience—was well settled before it was definitely decided that an indictment could be maintained for positive acts of misfeasance : Whart. Cr. L., 7th ed., § 86 ; Rex v. Railway Co., 9 Q. B. 315. The failure to make a public road, the site of which it has been found necessary to change in the construction of a railroad, is indictable : P. V. & C. Ry. Co. v. Commonwealth, 101 Pa. 192; Ang. & Ames Corp., 9th ed., § 395 ; Sussex Co. v. Strader, 3 Harrison

108; and this remedy is, moreover, concurrent with man-damus.

2. The franchise and privileges of a railroad company are granted for the public good and in consideration of certain duties assumed toward the public. Except by express permission of the legislature they can be exercised only by the grantee: Wood v. Railroad Co., 8 Phila. 94; but express permission to transfer these privileges to the Penn. R. Co. was given by the statutes recited in the lease itself, one of which authorized contracts having regard to the completion as well as the operation of the road: Act of April 13, 1860, P. L. 711. What was transferred was not merely visible property, but extraordinary rights and privileges exercisable by no private citizen, but only by a corporation, as the substitute and representative pro tanto of the sovereignty. The right to operate this road may not be severed from the accompanying duties, to whomsoever it may be transferred: 1 Wood Ry. Law, 578; Stephen v. Brown, 29 Vt. 160; Pierce v. Railroad Co., 51 N. H. 590; Hall v. Brown, 54 N. H. 495; Lindfield v. Railroad Co., 10 Cush. 562; Davis v. Railroad Co., 121 Mass. 134; Lamphear v. Buckingham, 33 Conn. 237; McCall v. Chamberlain, 13 Wis. 637; Ill. Cent. R. Co. v. Kanouse, 39 Ill. 278; Toledo etc. R. Co. v. Rumbold, 40 Ill. 144; Chicago v. Evans, 24 Ill. 52.

3. True, the original taking and construction was by the lessor, and under Danville R. Co. v. Commonwealth, 73 Pa. 29, such a taking would not be a nuisance per se; but to construct a railroad in such a manner as to interfere with the travel on the road is a public nuisance and its continuance indictable: North. Cent. R. Co. v. Commonwealth, 90 Pa. 300.

4. It is urged that § 14 of the incorporating act of April 3, 1837, P. L. 170, and § 7 of the supplementary act of May 8, 1854, P. L. 647, provide special remedies which exclude that by indictment. The act of 1837 is inapplicable, for at that time the railroad had no power to change the sites of public roads at all; and the act of 1854 applies only to disputes between the supervisors of townships and the railroad company, an example of which is in Penn. R. Co. v. Irwin Borough, 85 Pa. 336. The dispute here is not between the township officials

and the company. The matter concerns the public, and the commonwealth complains in her sovereign capacity. The road commissioners cannot bar her rights nor does any statute of limitation bar her prosecution: Snow v. Deerfield Tp., 78 Pa. 181.

*Mr. J. Ross Thompson* (with him *Mr. Samuel T. Neill*), for the defendant in error:

1. It is fundamental that he who does the wrong shall answer for all the consequences. By the substitution of the defendant company for the Philadelphia & Erie, there may be a contract liability, but this would not create a criminal liability. A lessee is not liable for a nuisance committed by the lessor before his entry: Taylor Land. & T. § 175. By § 5, act of March 27, 1852, the supplement to the charter of the Sunbury & Erie, if the said company shall find it necessary to change the site of any public road, *they* shall cause the same to be constructed forthwith, on the most favorable location, etc. There was no evidence that the defendant company found it necessary to change the site of this public road.

2. There is nothing on the record but the liability of the defendant for its nonfeasance. Not a witness testified that the present public road was not as good as the old road. By the act of 1837, the road commissioners are recognized to have the authority to authorize the change made. The right of the Sunbury & Erie R. Co. to occupy a public road was clearly implied in the 11th section of its charter: Commonwealth v. Railroad Co., 27 Pa. 354.

3. A statutory remedy is provided. Under the acts of 1837 and 1854, in a case of interference with a public road, provision shall be made therefor, the sufficiency of which shall be judged by the supervisors or road commissioners, and a failure is visited with penalties. This remedy is exclusive: Commonwealth v. Capp, 48 Pa. 53. There can be no other sentence imposed than a pecuniary fine: P. V. & C. R. Co. v. Commonwealth, 101 Pa. 197, which illustrates the futility of criminal prosecutions in such cases.

4. Though it is not contended that the statute of limitations bars it, yet the acquiescence for over twenty-five years, does interpose a serious obstacle to a criminal prosecution: 2 Archb.

Cr. Pr. 980; Rex v. Smith, 4 Esp. 111; Bliss v. Hall, 4 Bing.
N. C. 183; Chicago etc. R. Co. v. Joliet, 79 Ill. 25; Chicago
etc. R. Co. v. People, 91 Ill. 251; Pierce Railroads, 244–271;
without proof of previous notice or at least knowledge of the
nuisance: Pierce Railroads, 270; Couhocton Stone Road v.
Railroad Co., 51 N. Y. 573; Penruddock's Case, 5 Rep. 101;
Pearson v. Glenn, 2 Green 36.

OPINION, MR. JUSTICE CLARK:

When a body corporate commands or directs an act to be
done, and it is done to the nuisance of the community at large,
there is no principle which places it beyond the reach of the
criminal law. An indictment will lie, at the common law,
against a corporation for not repairing a road, a bridge, or a
wharf, when by statute or prescription it is bound to do so:
Wharton Crim. Law, 7th ed., 86. If it were not so, there
would be no effectual means for deterring railway and other
corporations from an oppressive exercise of power in this
respect. A railway corporation may take possession of such
portion of any public road as may be within the limits of the
right of way; it is not liable to indictment for nuisance for the
mere taking and occupancy of the road: Danville etc. R. Co.
v. Commonwealth, 73 Pa. 29.

In Northern Central Railway Co. v. Commonwealth, 90 Pa.
300, it was held, however, that, although the company may
construct its railway across any established road whenever it
is necessary to cross or intersect it, the railway must be so
constructed that it will not impede the passage or transporta-
tion of persons or property along the road; if it is not, but on
the contrary, is so constructed as to be a dangerous obstruction
to travel along the road, the company may be indicted therefor.

The act of April 3, 1837, which constituted the charter of
the Sunbury and Erie Railroad Company (now the Philadel-
phia and Erie Railroad) in the fourteenth section expressly
provides that the said railroad shall be so constructed as not to
impede or obstruct the free use and passage of any public road
or roads which may cross or enter the same, etc. By a sup-
plement passed in the year 1852, it was provided "That, if
said railroad company shall find it necessary to change the
site of any turnpike or public road, they shall cause the same

to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road." The provision last quoted is similar, in all respects, to the thirteenth section of the act of February 14, 1849, and it has been held that an indictment will lie against a railroad company for failure to reconstruct the road within a reasonable time in accordance with the requirements of this section of the act of 1849: Pittsburgh etc. R. Co. v. Commonwealth, 101 Pa. 192. "The injury," says the court, in the case cited, "is not to an individual only, but to the public; it is the denial to every citizen of the commonwealth of a right to the use of a public highway in place of the one taken by the corporation. . . . . The act provides no specific remedy for the enforcement of this duty. All common law remedies are therefore open against the violators of this law; the failure to reconstruct concerns the public, it is therefore an injury to the commonwealth, to which belongs the franchise of every highway, as the trustee for the public: O'Connor v. Pittsburgh, 18 Pa. 187."

In the case we are now considering, the road was situate between the railroad and the river. It is admitted that the company appropriated a considerable portion of the road, not by crossing it, or by passing along it at grade, but by constructing upon it a retaining wall of stone, and a high embankment, upon which the railroad bed is built. It was such an appropriation as was wholly inconsistent with the use of the same ground for a public road. It was the duty of the company, therefore, at their own proper expense, forthwith to change the site and to reconstruct the road, on the most favorable location, in as perfect a manner as the original road for the public use. No new road has ever been constructed, and it is alleged that the public has ever since been obliged to pass at great inconvenience, and with much danger upon a narrow shelf, between the wall and the river.

Now the Philadelphia and Erie Railroad Company, if they were operating their road, would without doubt be responsible criminally for the failure to comply with the requirements of its charter. This is settled by the case we have referred to: Pittsburgh etc. R. Co. v. Commonwealth, supra. "In accepting the charter," as Mr. Justice MERCUR says in the case just cited,

" the corporation acquires all the rights and privileges thereby given, but it assumes all the duties and obligations thereby imposed. Having taken the benefits, it cannot repudiate the burdens; it cannot be tolerated that the corporation may claim to enjoy everything beneficial to itself, and wholly omit to perform an act in which the public is so largely interested. The rights granted are in consideration of duties assumed, among which is the duty of reconstructing the public highway, from which it has excluded the public. Having accepted all the provisions of the act, this duty arises not only from the imperative command thereof, but also from an implied agreement and by tenure."

But the contention is, that the defendants are mere lessees of the railroad; that this public duty did not legally devolve upon them as lessees, and that the criminal law will not charge them with the performance of duties which the Philadelphia and Erie Company alone had assumed.

The Pennsylvania Railroad Company became the lessees of this road in the year 1862, before its completion. The lease was of a road " located, in part constructed and now being constructed, and to be constructed and completed, from its terminus at Sunbury, etc., to its terminus at the harbor of Erie, etc., with all the lands, bridges, depots, station-houses, machine-shops," etc., etc., embracing the entire property and estate of the company, for a period of nine hundred and ninety-nine years, etc., with the right to use, exercise, and enjoy all the rights, powers, and authority, etc., and all the corporate powers, and privileges, etc., of the Philadelphia and Erie Railroad Company, as fully and amply as the same might be used, exercised, and enjoyed by the lessors, had the lease not been made.

These rights and franchises in the hands of the lessees were of the same public character as if they had remained in the hands of the lessors; they were public rights to be exercised by the Philadelphia and Erie Railroad Company, in conjunction with the performance of certain public duties, which, by the acceptance of the charter and the construction of the road under it, were assumed. It is from the exercise of these public privileges and franchises granted by the charter that the public duty arises. Moreover, the commonwealth not only granted

the charter to the Philadelphia and Erie Company; it also authorized the transfer by the lease of the powers and privileges it secured to the Pennsylvania Railroad Company, and the latter company, in accepting the same and in the exercise thereof under the charter of the Philadelphia and Erie Company, must be taken to have assumed all the correspondent duties and obligations resting upon the lessors.

Where a corporation leases the road of another corporation, it becomes subject to all the statutory duties, obligations and restrictions imposed upon the leasing company: 1 Wood on Railroads, 578. The lessee of a railroad is subject to all the provisions of the lessor's charter, and during the existence of the lease is subject to all the duties and liabilities of the lessor under the charter, except such as may be said to be personal: Chicago v. Evans, 24 Ill. 52.

The Pennsylvania Railroad Company could not exercise these extraordinary powers under their lessor's charter to the exclusion of all others, even of the Philadelphia and Erie Company itself, without assuming all the correspondent duties imposed by the charter upon the latter company. The state confers upon railway companies some of its most essential powers of sovereignty, and in return stipulates for the faithful performance of such duties by the corporation as are deemed an equivalent or consideration, and neither the terms of their contract, as contained in the charter, nor any sound principle of public policy, will permit another railroad corporation, by a lease or transfer, to enjoy these high privileges and immunities, except on the terms imposed. The Pennsylvania Railroad Company, as the lessee, must accept the subject matter of the lease cum onere. As the duty to reconstruct this public road was a public duty, the disregard and violation of it is a public wrong; and, as we said in Pittsburgh etc. R. R. Co. v. Commonwealth, supra, this is a proper subject for indictment.

The judgment is therefore reversed, and a venire facias de novo awarded.