EUREKA FIRE HOSE COMPANY

*v.*

EUREKA RUBBER MANUFACTURING COMPANY.

[Decided April 12th, 1905.]

1. "Eureka," 'as an arbitrary or fancy word, was available to a rubber manufacturing company first adopting it for its exclusive use as a trade mark in the designation of its product.

2. The wrongful use of one of several words of a trade mark may constitute an infringement which will be enjoined.

3. The infringement of a trade mark may be enjoined, without regard to the intent of the infringer.

4. The voluntary selection and use of the word "Eureka" as part of defendant's corporate name, with the intention or purpose in part of competing with complainant, whose hydraulic hose and other goods, at the time of defendant's incorporation, the word had come to designate and distinguish in the trade, to the knowledge of defendant, in the absence of other evidence to control or explain it, raises a presumption that it was done with the intent to profit by complainant's trade reputation in competitive goods, and hence no further proof was necessary to entitle the complainant to an injunction against the use of the word to its injury.

Heard on bill, amended bill, answers, replication and proofs.

Complainant is a corporation of this state, incorporated December 25th, 1899, under the name of "Eureka Fire Hose Company," and the defendant is also a corporation of this state, organized July 15th, 1902, under the name of "The Eureka Rubber Manufacturing Company." The principal manufactures of the complainant are fire and other hose, two-thirds of its business being in a rubber-lined cotton fire hose, and a considerable part of defendant's sales—seven per cent. or more—are of hose of the same general character. Complainant is the successor of a company incorporated in the State of New York, in 1875, "to manufacture fire hose and other knit and woven fabrics," which carried on the business of manufacturing the

rubber-lined hose from that time until the complainant was in-
corporated in this state (where its factory was located), mainly
for the purpose of taking over the property and business of the
New York corporation. Complainant claims that at the time of
defendant's incorporation the hose and goods manufactured by
it had become known in the trade and to the public as the
"Eureka" hose or goods, and that it was entitled to the exclusive
use of this name as applied to these articles. The use by the
defendant of the name "Eureka" with reference to the same
class of goods, which it is putting on the market, is alleged to
be a violation of complainant's exclusive rights to the name
or word. The complainant also claims that the goods manu-
factured by its predecessor and itself, and always put upon the
market under the name "Eureka," were of a high grade or
standard, and the name came to indicate this high grade, and
that the use by the defendant of the name "Eureka," in con-
nection with the advertisement and marketing of its goods, is
an attempt to market their goods upon the reputation of com-
plainant's goods, and is done in unfair competition with com-
plainant; that the use of the word "Eureka" by defendant in
its corporate title, and in advertising and marketing its goods,
is likely to deceive and has in fact deceived the public, and has
led to purchases of defendant's goods instead of complainant's
goods. The complainant also alleges that because rubber is one
of the components principally used by it in its manufacture of
hose, the word "rubber" has from the time of the formation of
the New York company been often used by its customers and
correspondents as part of its title in addressing them for orders
or upon business; that the defendant company has established
an office in New York, where complainant also has an office,
and that such confusion has resulted from the use by both com-
panies of the name "Eureka" in reference to the same class of
goods; and it is also alleged that the use of the name "Eureka"
in its corporate title was in contravention of the eighth section
of the Corporation act, which provides that "no name shall be
assumed already in use by another existing corporation of this
state, or so nearly similar thereto as to lead to uncertainty or con-
fusion." The bill prays an injunction against defendant's using

the word "Eureka" in advertising or marketing its wares, especially fire hose, and the use of the name "Eureka" in its title as a corporation or otherwise. The defendant denies that the complainant's goods had become known in the trade by the name of "Eureka" goods, or that complainant had acquired any exclusive use of this name. It admits that it manufactures and markets rubber-lined cotton fire hose and other hose, in competition with complainant, but alleges that in advertising and marketing these goods the hose and other articles are not advertised, marketed or stamped with the single word "Eureka" as a trade mark or name, but that this word is only used in connection with the corporate name, and its place of manufacture, Trenton, New Jersey, together with the trade mark or trade name of the special article, such as "Acme," "Buffalo," "Capital," &c. As to the claim of unfair competition, the defendant denies that the use of the word "Eureka" in its corporate title or in advertising or marketing its goods is likely to deceive or has deceived the purchasing public, or leads or threatens to lead to a diversion of any of complainant's business to defendant, or that defendant has ever sold its goods as complainant's goods or on their reputation.

As to the selection of its name, the defendant alleges that on application made on its behalf to the office of the secretary of state it was informed that the name assumed by it had not been assumed by any other corporation, and that no other name so nearly similar thereto as to lead to uncertainty or confusion had been so assumed, and that thereupon the defendant chose this name.

Complainant alleges that before filing the bill it applied to the defendant to cease the use of the word "Eureka" in competition with it, and defendant admits a request to discontinue the use of the word "Eureka" in the prosecution of defendant's business, and that it declined to accede thereto, and the reason given is that the use of the word "Eureka" in defendant's corporate title, and in its advertisements and upon its goods, does not lead to any uncertainty or confusion, under the eighth section of the Corporation law, and does not constitute unfair trade or competition.

By an amendment to the bill, made at the hearing, the complainant also claims the exclusive right to a distinctive device, consisting of red, white and blue color parallel lines woven in the fabric for the purpose of distinguishing certain kinds of hose manufactured by it; that this device has become generally known to the public as indicating "Eureka" goods of a particular kind, and has become identified with "Eureka" hose. The exclusive right to use this device in connection with the trade name "Eureka" is claimed as a valuable asset. Defendant is charged with simulating this device by the use of red, white and blue parallel lines in its catalogues and in branding and putting up its goods, intending to mislead the public, and, it is charged, that for the purpose of creating confusion and causing the public to believe that defendant company is identified with complainant the defendant uses these color lines, and the restraint of this use is sought. The defendant's amended answer, also filed at the hearing, denies any simulation of this color device of complainant, or any use of it violating any rights thereto which complainant may have.

*Mr. Randolph Perkins, Mr. Gilbert Collins* and *Mr. Richard V. Lindabury,* for the complainant.

*Mr. John V. B. Wicoff* and *Mr. William M. Lanning,* for the defendant.

EMERY, V. C.    (After statement of issues.)

Four questions for decision are raised by the pleadings and proofs.

*First.* Whether complainant has such an exclusive right to the use of the name or word "Eureka" as applied to the goods of its manufacture that the use of this name or word by defendant in the marketing of similar goods in competition is an infringement of complainant's right to the use of the word or name on the goods.

*Second.* Whether the use of the name or word "Eureka" by the defendant in its corporate title or otherwise, in connection

with the marketing of the goods in competition with complainant, was unfair or fraudulent competition.

*Third.* Whether the use of the name was a violation of the statute.

*Fourth.* Whether defendant's use of the color lines, either on its goods or in the advertising and marketing of them, should be enjoined, either as a violation of complainant's exclusive right or as unfair competition.

The facts relating to the first question are not substantially disputed. It is clearly proved by complainant that the goods manufactured by the New York company, and by complainant as its successor, were, at the time of defendant's incorporation, generally known in the trade under the name of "Eureka" goods, and that their goods, especially the "Eureka" fire hose, had a more extensive sale and had acquired a higher reputation than those of any other manufacturer. The fire hose was a rubber-lined cotton fire hose in which an inside rubber tubing is covered with an outside cotton fabric (either woven or knit), the two being combined by a process of vulcanization. The rubber tubing used was manufactured for complainant to its special order and delivered in a special condition adapted to its process of vulcanization. The process of combining the tube and cover does not appear to have been patented, but complainant's predecessor claimed to have been the original makers of this combined cotton rubber-lined hose, and in its manufacture it appears to have attained the highest reputation in the home market, and also in many foreign markets. At the time of the transfer by the New York company its entire business in hydraulic hose amounted to over $500,000 a year, about two-thirds of which was the cotton rubber-lined hose, a trade exceeding that of any competitor in these goods. The price of the "Eureka" hose was generally higher than that of other hose, and some of its varieties had been adopted or referred to as the Standard hose. Several kinds of hose were made, differing in grade, quality and purpose of use, and to each of these varieties or brands a second or subsidiary trade name or trade mark was given, except to the kind marked with the word "Eureka" alone, which was the best of each class of hose manufactured. In every other case the

second or subsidiary name (usually called "brand" in the trade) was used in connection also with the name "Eureka," sometimes in the entire name of the brand, as "Eureka Peerless," "Eureka Wove Knit Hose," "Eureka Garden Hose," &c. In some form the name or word "Eureka" appeared on all their goods, and (except in a single instance) the name of the company, The Eureka Fire Hose Company, was also stamped on all their goods. This exception was the fire hose sold to the city of New York, where the brand name "Eureka" was alone used. All of complainant's hose bore thus in some form the name or word "Eureka." This word as an arbitrary or fancy word was available to complainant for its exclusive use as a trade mark in the designation of its goods, and as the proofs show, this single name or word "Eureka" had come to designate and distinguish complainant's hose and other goods at the time of defendant's incorporation. The circumstance that this name "Eureka" was also used in connection with other words (in its title or otherwise) could not deprive complainant of the exclusive use of this word as applied to their goods, or make the exclusive use dependent on the association with other words. Many of the words other than "Eureka" which were used on their different brands were merely descriptive and not the subject of an exclusive use, such as "Eureka Water Tower Hose," "Eureka Fire Boat Hose," "Eureka Tank Hose," "Eureka Garden Hose," "Eureka Wove Knit Fire Hose," &c. The defendant admits the use of the name or word "Eureka" on all of its goods which are put on the market in competition with complainant, but relies as a defence or justification upon the fact that the word "Eureka" is used on its goods only in connection with its corporate title—"The Eureka Rubber Manufacturing Company of Trenton, N. J.," which is stamped or marked on the goods, and in connection also with a special brand name, such as "Acme," "Buffalo," &c.

But if complainant has acquired the right to the exclusive use of the name or word "Eureka" as a trade mark on the goods of its manufacture, this right may be infringed by the use of the name or word, even although in connection with other words or accessories. *Paul Tr. M.* § *204.* In *Newman* v. *Alvord, 51*

*N. Y. 189,* plaintiffs manufactured cement or water lime from stone taken from quarries near Akron, Erie county, and their cement came to be known in the market as "Akron" cement. Their labels were "Newman's Akron Cement Co., manufactured at Akron, N. Y. The hydraulic cement known as the Akron Water Lime." Defendants manufactured cement from a stone quarried near Syracuse. Their labels were "Alvord's Onandaga Akron Cement or Water Lime, manufactured at Syracuse, N. Y." It was held (*p. 193*) that the plaintiffs had, as against the defendants (who did not get their cement from Akron), the right to the exclusive use of the word "Akron" as their trade mark on their goods. It appeared in this case (*p. 192*) that the court found that the word "Akron" was used in the label by defendants for the purpose of increasing their sales and availing themselves of the reputation acquired by plaintiffs' cement, under the name of "Akron" cement, and that it was calculated to induce ordinary buyers to believe they were purchasing either plaintiffs' cement, or cement of the same kind and value, but the judgment in the case was based on the plaintiffs' exclusive right to use the word "Akron" as their trade mark, and defendants' use of this word on their goods was enjoined (*p. 190*). In *Hier* v. *Abrahams, 82 N. Y. 519 (1880),* plaintiffs sold a brand of cigars with labels on the boxes "Hier & Aldrichs," and beneath this name the word "Pride" in large letters, and "Havana" underneath. Defendants' label was "The Pride of Syracuse," and beneath this "Abrahams & Co." An injunction against the use of the word "Pride" as a trade mark on cigars was granted, and the court said (*p. 525*) : "Its use in connection with different words or names from those in connection with which the plaintiffs used it does not sanction its being pirated any more than did the like use of the word 'Akron,' " &c. In *Ford* v. *Foster, L. R. 7 Ch. App. 611 (1872),* the plaintiff, who designated shirts manufactured by him as "R. Ford's Eureka Shirt," and had given them a trade reputation, was held to be entitled to a trade mark of the word "Eureka" as applied to shirts, and to enjoin defendant, who sold similar articles labeled with the word "Eureka" alone, and in *Saxlehner* v. *Eisner & M. Co., 179 U. S. 19,* where the use of the word "Hunyadi," used in connection

with other words by defendant, was in question, the court sustained complainant's claim to the exclusive use of the word, and it was said (*p. 33*) : "The reports are full of cases where bills have been sustained for the infringement of one of several words of a trade mark."

Unless there be something in the claim of defendants that the use of the word as part of their corporate title authorizes the attachment of its name (including the word "Eureka") to the goods sold in competition with complainant, then the use of the name or word, either alone or in connection with any other words, on these goods must be enjoined. I can see no difference or distinction in law between the appropriation of the benefit of a trade mark name or word by using it as part of a corporation name stamped on the competitive goods, and its appropriation by use in connection with other words or phrases, as was done in the *Akron Case* and in the *Rogers Case*. Even if the addition of the other words in its title had been such as to clearly indicate that defendant, and not complainant, made the "Eureka" goods in question, yet as defendant, when it assumed this name, was unknown to dealers in these goods, the effect of placing the familiar name on them was, according to the doctrine of several well-considered cases, to give defendant the benefit of the well-established reputation of the articles and to derive a greater benefit from their fraud. *Shaver* v. *Heller, &c., Co., 108 Fed. Rep. 821, 823; Menendez* v. *Holt, 128 U. S. 514, 521 (1888).* But there was nothing in the other words of defendant's corporate title which indicated clearly that its goods on which the name "Eureka" appeared were not complainant's goods, or goods of the same class. For the main word by which complainant was known in the trade for its goods was as the "Eureka" company, and the words "fire hose" or "rubber manufacturing" are merely descriptive of the business of the company. As the "Eureka" goods, or most of them, on the market were partly composed of rubber, they were certainly the product of a rubber manufacturing company, and in the trade these words would not of themselves be likely to distinguish defendant from complainant; the words "Trenton, N. J.," as indicating the place of manu-

facture, would have little or no effect for purposes of distinguishing the makers of the goods, for both companies had offices in New York City, from which orders were taken, and although complainant's factory was in fact in New Jersey, the place of actual manufacture would probably be unknown to many of their customers. The proofs show that while in the trade complainant's corporate name always included the word "Eureka," the other words were often misstated and sometimes omitted, and the confusion between complainant and defendant companies which in some cases is proved to have occurred in the trade resulted, as I think, from the fact that the defendant had adopted the word "Eureka" in its title. It was the main word of the title—its catch-word, so to speak—which the trade identified with the maker of the goods, rather than the other descriptive words of the title, which are often misstated. If this incorporation of complainant's trade mark word in defendant's corporate title is an infringement of the trade mark, then complainant is entitled to protection by injunction. This protection is granted without regard to the intent of the infringer, because a fraudulent intent to deceive the public and appropriate the benefit of the trade reputation of another is conclusively presumed, from the using of the name or mark after request to desist, although the absence of such intent may in some cases be a defence to an action for damages. *Paul Tr. M.* § *123,* and cases cited; *Lawrence Manufacturing Co.* v. *Tennessee Manufacturing Co., 138 U. S. 537, 548 (1891); Hier* v. *Abrahams, 82 N. Y. 519, 526 (1880).* Complainant is entitled to enjoin defendant from using the word "Eureka" as part of its corporate title, or in any form on any of the hose or other class of goods sold in competition with complainant which were manufactured or sold by complainant with that name marked on them at the time of defendant's incorporation.

*Second.* Is the complainant entitled to enjoin, either wholly or to a limited extent, the use of the word "Eureka" in defendant's corporate name? The right to this relief is based on two grounds—*first,* that irrespective of complainant's right to any exclusive use of the word as a trade mark, the defend-

ant's use of the name or word "Eureka," in connection with its corporate title, as describing or indicating the origin of its goods manufactured in competition with complainant, constitutes unfair trade or competition. The *second* ground is that the selection of the name and use of the name is a violation of the eighth section of the Corporation act, because it leads to uncertainty or confusion. The claim to this relief upon the *first* ground is broader than the claim to enjoin the use of the name or word on the goods themselves, or in connection with other words, as part of its title or otherwise, which is a strictly trade mark use of the word, and the claim extends to its use of the name in any manner and for any purpose, and on the goods or otherwise, so long at least as defendant continues the competition with complainant's goods. The contention is that because of the reputation which to the knowledge of defendant had been given to "Eureka" goods in the market by complainant, the selection of this name as part of defendant's corporate title, for use in its advertisements, circulars, letter-heads, signs or otherwise, for marketing goods in competition with complainant, is in itself unfair competition, without regard to any actual fraudulent intention of the defendant in the adoption or use of the word in its corporate title, and it is further contended that the facts proved show an actual fraudulent intent on the part of the defendant to avail itself of complainant's trade reputation in these goods. If such fraudulent intent to profit by complainant's trade reputation in these competitive goods existed, and the corporate name adopted was calculated to deceive, then the use of the name to the injury of the complainant must be enjoined. This principle was declared by the court of errors and appeals in *International Silver Co.* v. *William H. Rogers Corporation, 67 N. J. Eq. 646 (1905),* and the use of an individual's own name in a corporation of which he was an incorporator and officer was enjoined because it was satisfactorily shown that it was voluntarily selected, and for the purpose of making an unfair use of it in competition with complainant. Where the use complained of is that of the use of defendant's own name, either individually or as part of a corporate title, courts have differed upon the question whether fraudulent intent in the

use of the name must be shown in order to entitle complainant
to an injunction, and the status of the authorities on this im-
portant question is thoroughly examined by Vice-Chancellor·
Stevens, before whom the *Rogers Case* was heard, in his opinion.
*66 N. J. Eq. (21 Dick.) 119 (1904).* He concluded that the
whole question of unfair competition by the use of names or
words of which complainant claimed a benefit by reason of
trade reputation given to them exclusively by it, was reduced
to the single substantial inquiry whether the defendant was in
fact, by the use of the name or word, representing his goods
as the goods of the complainant, and that if he was so repre-
senting his goods, then, by the weight of authority, fraudulent
intent in the use need not be proved to obtain an injunction,
although it might be necessary in an action for damages for
the false representation. The application of this rule as to the
proof required to show fraudulent intent in the use of the name
is brought into question where the name used by the defendant
is either his own name or a name which is part of the common
stock of the language, such names being both classes of words
which *prima facie* he is entitled to use, subject, however, to
the qualification that he must so use them as not to represent
(either intentionally or otherwise) his goods to be those of
another whom he knows to be using the name. In such cases
proof of other facts than the mere choice of the name may be
necessary to justify either the presumption or conclusion that
the use of the name by defendant is for the purpose of repre-
senting his goods to be the goods of complainant, and there-
fore unfair competition. But where, as in the present case,
the distinctive feature of the corporate name selected by de-
fendant was an arbitrary name, and was the trade name long
established by complainant for those goods which defendant
manufactures in competition, then the question which arises
is whether any proof of fraudulent intent or unfair competi-
tion is necessary beyond the mere selection and use of the name
with the intention of competition in those goods. In this class
of cases involving the purely voluntary selection of name, the
selection of an arbitrary name, to which another has given a
trade reputation or value, in connection with the very class of

goods defendant intends to put on the market, under a name containing the arbitrary or trade name, would seem to be ordinarily, of itself, sufficient proof of unfair competition, without further proof of fraudulent intent. The principle applicable in this latter class of cases and the distinction in matter of proof necessary in the two classes, is stated in the leading case of *Burgess* v. *Burgess*, *22 Law Jour. Ch. (N. S.) 675 (1854)*, by Lord Turner, which has often been referred to as clearly declaring the law on the unfair use of trade names. He says (at *p. 678*) : "Where a person is selling goods under his own name, and another person, not having that name, is using it, it is clear that he so uses it to represent the goods sold by himself or the goods of another; but where the two persons have the same name, it does not follow that because the defendant sells goods under his own name, and it happens that the plaintiff has the same name, he is selling goods as the goods of the plaintiff." In the report of the same case, in *3 DeG. M. & G. 896, 905*, the language used is "it may be presumed," instead of "it is clear," but the report in *17 Jur. 293*, agrees with the *Law Journal Reports*. In *Fuller* v. *Huff, 104 Fed. Rep. 141, 145 (C. C. A., 1900)*, it was said that the unnecessary use of a name long used previously by another in the same business, and identified with its product, was likely to deceive the public, although used with prefixes or suffixes, and the manifest tendency to deception authorized an injunction without proof of any instance of actual deception. In *Cellular Clothing Co.* v. *Maxton, App. Cas. 326, 333 (1899)*, the following statement of the law was approved: "In such a case [where a trader selects an invented name to distinguish his goods from those of other traders] the mere fact of the use of the arbitrary sign by a rival trader raises a presumption of a design to pass off his goods under false colors, which it is not easy to displace." The voluntary selection and use of the arbitrary name or word "Eureka" as part of the defendant's corporate name, with the intention or purpose (in part) of competing with complainant in the sale of goods for which complainant had, to the defendant's knowledge, already given a trade reputation in the market under this name, must, in the absence of other evidence to

control or explain it, be presumed to have been done with the intent to profit by complainant's trade reputation in these goods, and no further proof of fraudulent intent is necessary to entitle complainant to an injunction against the use of the name to its injury. The complainant contends, however, that on the whole evidence such actual fraudulent intent on the part of the defendant is made out, and I think the claim is well founded. Of the defendant's knowledge of the trade reputation of complainant's goods, and of its intention to use the name in the sale in competition with complainant, the proof is clear. Mr. Lambert, who was one of the promoters of the defendant company, and is now its general manager, had been in the rubber business for nearly twenty years, and was acquainted with the general trade in cotton rubber-lined hose throughout the country, and especially with the complainant's manufacture. Mr. Cook, one of the incorporators and now the president of the defendant company, had also been engaged for many years in another company which manufactured similar goods, and had some business dealing or acquaintance with complainant's manager. Another of the incorporators had also been connected with the same company. When the corporate name of defendant was selected, the incorporators knew of the complainant's corporate title, "The Eureka Fire Hose Company," and made the selection of their own title in the view that notwithstanding complainant's name they were entitled to do so. This fact appears from the letter of their solicitor, written to complainant's solicitor, November 26th, 1902, in reply to a request on complainant's behalf to drop the name "Eureka," either in its corporate title or the goods manufactured in competition. The complainant's articles of incorporation declared its object to be (among other things) "to carry on the business of manufacturers of fire and other hose and knit and woven fabrics and woven goods, and *all goods of which rubber is a component part, and the various materials entering into the manufacture of any and all such goods.*" Defendant's articles declare its object (among other things) "to make, purchase and sell rubber articles and *goods of every kind and description, of which rubber, or other like gum, is a*

*component part, and the various materials entering into the manufacture of any and all such goods."* This similarity of language indicates that the complainant's charter may have been in the hands of the draughtsman of defendant's charter, who was the person who made inquiry at the office of the secretary of state. Before the erection of its factory and putting its goods on the market, Mr. Lambert, as defendant's manager, prepared a preliminary catalogue, in which attention was specially called to defendant's goods as "Eureka Goods," by a marginal notice in the catalogue printed in a large, separate block, with large capital letters, reading, "How to Tell Eureka Goods." These directions, "How to Tell Eureka Goods," thus specially called to the attention of the trade, gave directions only as to the hose of the defendant company, which were to be branded by its tri-colors, red, white and blue rings encircling the circumference of the hose, with its name and brand. In its letter-heads, the general style of complainant's letter-heads was followed, with the picture of a factory from a particular point of view, giving a similar general effect. On these letter-heads the word "Eureka" in the corporate title is most prominently and separately printed above, and directly under it is a section of hose, with red, white and blue circles, and the word "Eureka" only of its title appearing on the upper circle. On its sign at the New York office the word "Eureka" in the corporate title is also lettered separately and prominently in a manner to attract attention. Under these circumstances, the case would seem to be one where, if the actual intent is important, the burden of showing that the selection and use of this word in defendant's title was not made for the purpose of deriving some benefit in the competition with complainant in "Eureka" goods is upon the incorporators. None of them have been called, and the case of the defendant upon this point rests upon the evidence of Mr. Lambert alone. So far, therefore, as the case depends upon defendant's intention in the adoption or use of the name, it must be rested on his evidence, and the conclusion to be drawn from his evidence and actions. He gives no direct explanation or statement of the reason for adopting the name, and his evidence shows, apparently, that he

considered the only trade mark or trade name to which complainant was entitled in the trade to be the special "brand" names fixed on its varieties of goods, and that it had no special right to the name "Eureka" except as one of its special brand names, and his whole course in the use of the word in the exploitation of defendant's business proceeded manifestly on this view. His evidence as to the effect of the names of special brands as indicating in the trade the makers of the goods is that, although well-known brands which have been on the market for any length of time are probably better known by the specified brands than by the names of the makers, and are usually referred to by the brand name, yet brands not so well known are usually called by the names of the makers. The fair conclusion from this evidence is, I think, that the names of the makers in the trade, as usually applied to their goods, *e. g.,* the "Eureka Goods," the "Boston Belting Goods" the "Goodrich Goods," &c., first establishes the reputation of the brands in the trade, and that the brand name itself afterwards often becomes a sufficient indication of the maker. Lambert says that the complainant's goods are perhaps more generally known by their brand names than those of any other manufacturers in the market. This indicates, I think, that in his judgment any brand put on the market originally as "Eureka Goods" acquires afterward a special reputation in the trade, by which the name of the brand alone designates the maker. Lambert's admitted familiarity with the trade and with complainant's reputation for the goods put on the market originally, at least, as "Eureka Goods," his subsequent conduct as manager of the defendant in the use of this word "Eureka" in the catalogue, letter-heads and advertisements in putting on the market goods manufactured in competition with complainant, the persistence in using the name after notice that confusion had already occurred, taken in connection with the failure to give any explanation or statement of the reasons for selecting the name, warrant the conclusion that the defendant's adoption and use of the word "Eureka" as part of its corporate title and otherwise, was in fact for the purpose of availing itself to some extent of the

trade reputation complainant had given to goods marketed under that name, and actual fraudulent intent is proved.

On the question of the violation of trade mark or trade name, no weight can be given to the certificate or reply of the corporation clerk on defendant's inquiry as to its corporate name, for evidently the replies to such inquiries concern only an objection apparent in the name itself, without other consideration, and the action of defendant in acting on this reply must be, of course, at its own risk, when its adoption of the name is properly brought in question. As to the extent to which the use of the name should be enjoined, the protection of complainant's trade name in connection with the marketing of goods manufactured in competition is the limit of its rights. The bulk of defendant's business is in rubber mechanical goods not dealt in by complainant, and for the purposes of this business it has the right to use the word as part of its name or otherwise. But so long as it puts on the market goods in competition with complainant, the use of the word in its name, or otherwise in connection with these goods, seems, under the evidence in the case, necessarily calculated to mislead the public and to give defendant some advantage of complainant's trade reputation. I cannot see how complainant can be sure to receive the full benefit of the trade name to which it is entitled except by enjoining defendant's use of the name in its title or otherwise so long as it continues the manufacture or sale of the goods sold in competition with complainant. I think, however, the injunction should extend only to the goods or class of goods which complainant was putting on the market under its name at the time of defendant's incorporation, and if complainant claims a wider injunction, I will hear it on this point. The form of a limited injunction was not specially considered at the argument, and I will settle this upon notice if necessary.

*Third.* As to the complainant's right to enjoin the use of defendant's corporate title under the statute, this right exists only if the name assumed is so nearly similar to the existing corporate name of complainant "as to lead to uncertainty or confusion." The evidence in the cause does show that the use of the word

"Eureka" in defendant's corporate name has led to some confusion, but in the main this confusion has occurred in reference to dealings—correspondence, orders, &c.—in the goods sold in competition. If the use of the word is enjoined so far as is necessary to protect complainant in its business, it is very doubtful whether any confusion or uncertainty will result, other than that which complainant unavoidably incurs by the insertion in its title of a word which is also included in the corporate name of many other corporations engaged in different business. On the evidence produced in this cause I will not advise a general decree that the use of defendant's corporate title be enjoined. The denial of this relief, however, is to be without prejudice to the filing of a bill hereafter for such relief in case it should appear that under the application of the limited injunction granted confusion or uncertainty, to the injury of the complainant, exists or continues.

*Fourth.* As to the use of the tri-color device by the defendant, the case now presented shows no ground for enjoining the defendant. Complainant's use of the colors has been confined to its fabrics of linen hose and cotton hose or jackets, the lines of dyed threads extending longitudinally through the fabric. These colors seem to have been originally adopted because of the rules of an underwriters' board, which required a color distinction of some kind to indicate its approval of the hose as sufficient for the use of factories or buildings insured by its members, and the tri-color is used on only a portion of complainant's goods. The defendant on its cotton fabrics uses different color lines, purple or orange and green. Its only use of the red, white and blue on its products is on its rubber hose, by printing them with a plate three or four inches long and an inch wide, on or near the ends of the section of rubber hose. It also uses these colors on its letter-heads, catalogues and envelopes. Complainant's only ground to enjoin specially the use of the tri-color must be on the basis of trade mark rights, and assuming that it has such rights, I do not think an infringement of them by the defendant has been shown, and this special relief sought by the amended bill must therefore be denied. Irrespective of any trade mark

right or claim, the use of the tri-color by defendant is of some importance in the cause in connection with the defendant's use of the complainant's trade mark and trade name "Eureka" in the sale of hose, as bearing on defendant's intent in using the trade name, but it has not been shown to be a ground for independent relief. A decree will be advised in accordance with this opinion.