## Collegeville Borough, Appellant, *v.* Philadelphia Suburban Water Company.

Argued April 20, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

reargument refused June 24, 1954.

*P. Nicholson Wood*, with him *Grover C. Ladner* and *Clark, Ladner, Fortenbaugh & Young*, for appellants.

*W. James MacIntosh*, with him *Robert H. Young, Ernest R. von Starck, High, Swartz, Flynn & Roberts* and *Morgan, Lewis & Bockius*, for appellee.

*Harry F. Stambaugh*, Special Counsel, with him *Samuel M. Jackson*, Deputy Attorney General and *Frank F. Truscott*, Attorney General, for Commonwealth, intervenor, appellee, on question of jurisdiction of Water and Power Resources Board.

OPINION BY MR. JUSTICE CHIDSEY, May 24, 1954:
Nine boroughs, six townships and thirty-eight individuals and corporations brought an action in equity

against the Philadelphia Suburban Water Company in the Common Pleas Court of Montgomery County seeking to enjoin the defendant from appropriating and diverting water from the Perkiomen Creek, from erecting a dam across the creek for the creation of a reservoir incident to the proposed taking of water, and from condemning or acquiring by eminent domain or otherwise any water, lands or rights whatsoever within the watershed of the creek for water supply purposes.

The defendant filed preliminary objections asking that the complaint be dismissed on the ground that plaintiffs had failed to exercise or exhaust statutory procedures and remedies available to them, that plaintiffs had an adequate remedy at law and that equity was precluded from granting the relief prayed for. The court en banc (one judge dissenting), holding that it had no jurisdiction over the subject matter for the reasons asserted by the defendant, sustained the preliminary objections and entered a decree dismissing the complaint. From this decree eight of the plaintiffs, five of whom are municipalities in the area, two of whom are downstream mill owners, and one an owner of property allegedly situated on or near the banks of the Perkiomen Creek, have appealed under the Act of March 5, 1925, P. L. 23.

Under Procedural Rule No. 1017 complainants filed an answer to the preliminary objections. The latter incorporated therein findings and actions taken by the Water and Power Resources Board, including the permit issued to the defendant to proceed with its project. From the pleadings the undisputed facts material to the issue of jurisdiction, which is the sole issue before us, are as follows:

On or about February 28, 1950, the defendant filed an application with the Water and Power Resources

Board under the provisions of Section 6 of the Act of June 24, 1939, P. L. 842, 32 PS §636, requesting allocation to it of an additional 16.5 million gallons of water per day from the Perkiomen Creek, said additional water to be taken at defendant's Wetherill Dam and pumping station after impoundment of the water in a proposed reservoir on the creek, at Green Lane, Montgomery County, and release therefrom for recapture at the Wetherill Dam and pumping station located about 4,000 feet above the mouth of the creek in Lower Providence Township, Montgomery County. A hearing upon this application was scheduled by the Board for May 10, 1950 and was held after the required notice had been given. About 50 protestants appeared thereat, either in person or by counsel, including some municipalities, the Norristown Water Company and the Pennsburg Water Company. A number of these protestants were thereafter plaintiffs in the equity action.

Following these hearings the Water and Power Resources Board issued a permit on or about January 11, 1951, approving defendant's application for the allocation of an additional 16.5 million gallons of water per day from the creek, subject to certain conditions specified therein. An appeal was taken from this action to the Court of Common Pleas of Dauphin County by Norristown Water Company, Perkiomen Valley Sportsmen's Association and Upper Perkiomen Board of Trade. The Borough of Norristown, one of the appellants here, was permitted to intervene by stipulation of the parties to that proceeding. At the direction of the court the Board on April 11, 1951 filed findings of fact and reasons therefor in which it specifically found, inter alia, that the water rights proposed to be acquired by defendant (a) will not conflict with the rights theretofore validated to Nor-

ristown Water Company or those held by any public water supply agency, (b) are reasonably necessary for its present purposes and future needs and (c) will not interfere with navigation, jeopardize public safety or cause any injury to the Commonwealth. Thereafter, the appeals were terminated by a compromise which took the form of a consent decree issued by the court under date of June 27, 1951 in the Norristown Water Company appeal, the withdrawal of the Borough of Norristown as an intervenor in that appeal and the withdrawal of the appeals of the other parties plaintiff. The Water and Power Resources Board on July 11, 1951 issued an amended permit which included the modifications which formed the basis of this consent decree.

On May 15, 1952, over 10 months subsequent to the issuance of this amended permit, a petition was filed with the Water and Power Resources Board by a large number of individuals and municipalities, including 32 of the plaintiffs in the instant equity proceeding, requesting the Board to reopen the proceedings, grant a rehearing and in the light of the evidence to be submitted, revoke the amended permit which had been issued. A substantially similar petition was also filed August 15, 1952 by the Borough of Norristown. Extensive hearings were held before the Water and Power Resources Board upon these petitions on October 22nd, November 12th and December 9, 1952. At the conclusion of the last hearing, the proceedings were closed and briefs were filed by the respective parties. Thereafter on April 8, 1953 an order was issued by the Water and Power Resources Board dismissing the petitions on the ground that petitioners had failed to show any new matter or that new or changed conditions had arisen since the original hearings. No appeal was taken therefrom or from the Board's order

of July 11, 1951 directing the issuance of the amended permit.

On April 15, 1952, the defendant filed with the Water and Power Resources Board an implementing application for permission to construct the dam on the Perkiomen Creek near Green Lane in Marlboro and Upper Frederick Townships, Montgomery County, which is the subject of complaint in the equity proceeding. The application was made pursuant to the requirements of the Act approved June 25, 1913, P. L. 555, as amended, 32 PS §681 et seq., and was supported by detailed plans and specifications including reports on engineering and geology. In accordance with the requirements of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.1 et seq., the Board scheduled a public hearing for June 10, 1953. Written notice of this hearing was given by the Board to all parties who had appeared in any of the prior proceedings before it, and by due publication in periodicals. Amongst many protestants appearing were 32 of those who thereafter became plaintiffs in the instant equity action. After this hearing, on August 12, 1953 the Board issued its adjudication and order approving the defendant's application for a permit to construct the dam at Green Lane, subject to certain specified conditions. No appeal was taken from this adjudication and order.

In the permit issued to the defendant the condition was imposed that "A continuous flow of not less than 0.25 cu. ft. per second per square mile of water shed area above the proposed dam at Green Lane shall be released from that reservoir into Perkiomen Creek immediately below the dam at all times, except when the natural inflow into said reservoir is less than 0.25 c.s.m. when the release from said reservoir shall be

equal to either (a) the natural inflow into the reservoir or (b) 0.15 c.s.m., whichever is greater. This release shall be in addition to any water released from the impounding reservoir for recapture at the Wetherill dam allocated under this permit.".

The Board found, inter alia, that the prescribed method of operation will not appreciably increase the channel loss resulting from the transit of the water downstream; that the record clearly established applicant's need for the additional 16.5 million gallons per day; that the Perkiomen Creek would provide defendant's needed additional supply if its resources are conserved in the manner proposed by the defendant; that the project will have a beneficial effect on the lower Perkiomen by improving low flow conditions and by tending to reduce the harmful effects of floods; that the impounding of the water when the flow of the creek is in excess of 11.5 m.g. daily at Green Lane for use during times of low flow, is in the interests of conservation and development of the water resources of the Commonwealth; that the additional taking will not jeopardize public safety or cause any injury to the Commonwealth, but on the contrary will protect one of the large metropolitan areas from the hardship and dangers of a critical water shortage and will provide needed conservation of the water resources in the area and that the water rights proposed to be acquired by the defendant are reasonably necessary for its present purposes and future needs.

It was also specifically found by the Board that "1. The proposed dam is necessary to enable the applicant to comply with the terms of the Amended Permit issued by this Board dated January 11, 1951. 2. The site of the proposed dam provides a hard rock foundation capable of resisting any force imposed upon it by the dam and reservoir. 3. The proposed dam will have an

adequate spillway. 4. The proposed dam will provide a safe and stable structure. 5. The proposed dam will not be derogatory to the regimen of Perkiomen Creek.".

It is conceded by appellants that all of the plaintiffs in the instant equity action could have been represented by counsel or appeared at the various hearings before the Board had they desired to do so. Some of them did in fact appear, but none appealed from the final decisions of the Board. Such an appeal to the Dauphin County Court was provided for and available. Thus all of the plaintiffs in the equity action either failed to pursue or to exhaust the statutory remedies afforded them.

It has long been established that the jurisdiction of a court in equity may not be invoked where there is an adequate remedy at law, and equally well settled that statutory remedies must be exhausted before resort to equitable jurisdiction. In *Myers et al. v. Bethlehem Shipbuilding Corp.*, 303 U. S. 41, the company sought by bill in equity in the Federal District Court to enjoin the National Labor Relations Board from proceeding with hearing upon alleged unfair labor practices on the ground that its activities did not concern interstate commerce. After noting that this issue was to be decided initially by the Board and that adequate procedures for review by the Circuit Court were provided, Mr. Justice Brandeis, in writing the unanimous opinion of the Court, said: ". . . So to hold would, as the Government insists, in effect substitute the District Court for the Board as the tribunal to hear and determine what Congress declared the Board exclusively should hear and determine in the first instance. The contention is at war with the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been ex-

hausted. That rule has been repeatedly acted on in cases where, as here, the contention is made that the administrative body lacked power over the subject matter.". In Pennsylvania this principle has been embodied in the Act of March 21, 1806, P. L. 558. We have repeatedly held that equity is not available where a remedy is provided by statute. A recent pronouncement of the rule appears in *Oteri Appeal*, 372 Pa. 557, 94 A. 2d 772, where the complainant in a bill in equity failed to follow the statutory procedure for appeal from the decision of a zoning board. We said at p. 561: ". . . Mrs. Bartone, complainant therein, could not resort to a bill in equity in circumvention of the remedy afforded by the statute. We repeat what we said in Derry Township School District v. Barnett Coal Company et al., 332 Pa. 174, 177, 2 A. 2d 758: '. . . When a statute provides a remedy by which a right may be enforced, no other remedy than that afforded by the statute can be used. The Act of March 21, 1806, P. L. 558, section 13, provides that: "In all cases where a remedy is provided or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of said acts shall be strictly pursued. . . ." That equity is not available where a remedy is provided by statute, in view of the provisions of the Act of 1806, supra, has been decided in *Arna's Appeal*, 65 Pa. 72, and in *Phelps's Appeal*, 98 Pa. 546 . . . When a statutory remedy has been provided, each step in the proceeding can be taken only as the legislature has prescribed: [citing cases]. . . .' ". In *Taylor v. Moore*, 303 Pa. 469, 154 A. 799, where this Court reviewed the application of the Act of 1806 to proceedings under the Zoning Acts, the Public Service Company Law and the Workmen's Compensation Law, we noted that in each case the statutory remedy was exclusive. In referring to the Public Service Company

Law, we said at p. 474: ". . . Since that act has become part of our law, we have held, that our courts have no jurisdiction by bill in equity or otherwise to consider and judge such cases until they come to them on an appeal, by way of the procedure provided by that law. This is so *even though the constitutional question of confiscation is involved,* whether it be valuation, grade crossing, re-routing of cars, removal of poles and wires, operating in a given territory, or any question arising under that act; all have been referred to the particular remedy following the Act of 1806: [citing many cases] . . .". (Emphasis supplied).

However, equity will afford relief if the statutory remedy is not adequate or its pursuit would work irreparable harm: *Duquesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287; *Wood et al. v. Goldvarg,* 365 Pa. 92, 74 A. 2d 100. Neither appellants nor any of the plaintiffs in the instant equity action complained nor could they have complained that pursuit of the statutory remedy afforded would cause them irreparable harm. As to the adequacy of the statutory remedy, appellants' principal contentions are: (1) that a fundamental issue raised by the complaint in equity did not fall within the scope of the Acts of 1939 and 1913, supra, and (2) irrespective of the existence of a statutory remedy, relief in equity has been expressly preserved by Section 42 of the Administrative Agency Law of 1945. The first contention is thus stated in their brief: "Whether the Defendant May Invade a Watershed Where It Has No Franchise and Divert That Water to Its Franchised Territory Is a Question Which Was Not and Could Not Be Considered by the Water and Power Resources Board, and Is Peculiarly Within Equity Jurisdiction". We do not agree. The question posed was one for the determination of the Board and it was necessarily considered by it. Appel-

lants would unjustifiably narrow the jurisdiction, powers and duties conferred upon the Board by the Act of 1939. The title of the Act recites, inter alia, that it is "AN ACT Relating to the acquisition of rights to divert water from rivers, streams, natural lakes, and ponds, or other surface waters within the Commonwealth or partly within and partly without the Commonwealth; . . . vesting in the Water and Power Resources Board certain powers and authorities for the conservation, control and equitable use of the waters within the Commonwealth in the interests of the people of the Commonwealth; . . .". Its preamble declares: "WHEREAS, An adequate and safe supply of water for the public is a matter of primary concern affecting the life, health and comfort of the people of this Commonwealth; and WHEREAS, The increase of the population makes it necessary that the available supply of water be conserved, controlled and used equitably for the best interests of all concerned; and WHEREAS, The use of water for the supply of water to the public is the most essential of all public service, vital to life itself; and WHEREAS, The public interest requires that public water supplies be developed not only for present needs but also for developing needs for a reasonable time in the future from and after any original appropriation or acquisition of a source of supply; and WHEREAS, The public interest requires that sources of water supply appropriated or acquired but not used or not reasonably necessary for future needs should be available for appropriation or acquisition by others requiring such sources.".

To accomplish the purpose and expressed intent of the Legislature, the Act, in summary, provides, inter alia, that the Water and Power Resources Board shall initially determine the validity of all existing claims to water rights; to confirm such claims as were found

to be valid and to keep a record of all confirmed water right acquisitions and of all permits for acquisitions of water rights thereafter issued. To facilitate performance of this duty, all water supply agencies were required to file their claims to existing water rights. To insure proper future supervision, all agencies are required to apply to the Board for the acquisition of new or additional water rights. Procedure is prescribed and public hearings are provided for where the applicant, or any party who may be directly or adversely affected by any decision or finding of the Board, may be heard in person or by counsel, and the right of appeal is given from the decision of the Board to the Common Pleas Court of Dauphin County. Upon receipt of an application, the Board is required to make an investigation and in the case of apparent conflict of interests, the investigation shall include and consider the extent of the conservation, development and use to the best advantage of existing sources of water supply. The Board is empowered to issue, modify or impose conditions in permits theretofore or thereupon issued when deemed necessary in the public interest. It may also revoke any permit if actual taking of the water is not made within four years after its issuance. Before issuing a permit, the Board must find that the water rights proposed to be acquired are reasonably necessary for the present purposes and future needs of the agency making application therefor and that the taking of the water or the exercise of the water rights will not interfere with navigation, jeopardize public safety, or cause substantial injury to the Commonwealth.

Manifestly the purpose of the Act is to establish a single tribunal to determine questions of the appropriation and diversion of water from the streams of the Commonwealth. By law the Board is composed of

the Secretary of Forrests and Waters, the Secretary of Health, the Commissioner of Fisheries, a member of the Pennsylvania Public Utility Commission and an engineer. With its staff and facilities, it is best qualified to secure uniformity in policies and rulings and to adjust conflicting claims to water and water rights. The water of a stream (as here in the case of Perkiomen Creek) which may traverse several counties, cannot be equitably or consistently apportioned by as many courts of common pleas. The problem of control and distribution is State-wide and should be decided by one tribunal which possesses jurisdiction throughout the State.

In *City of Trenton v. State of New Jersey*, 262 U. S. 182, it was said at p. 185: "The State undoubtedly has power, and it is its duty, to control and conserve the use of its water resources for the benefit of all its inhabitants, and the Act of 1907 was passed pursuant to the policy of the State to prevent waste and to economize its water resources . . . The power to determine the conditions upon which waters may be so diverted is a legislative function. The State may grant or withhold the privilege as it sees fit . . .". And in *Hudson County Water Company v. McCarter, Attorney General of the State of New Jersey*, 209 U. S. 349, Mr. Justice HOLMES stated at p. 356: ". . . it appears to us that few public interests are more obvious, indisputable and independent of particular theory than the interest of the public of a State to maintain the rivers that are wholly within it substantially undiminished, except by such drafts upon them as the guardian of the public welfare may permit for the purpose of turning them to a more perfect use. This public interest is omnipresent wherever there is a State, and grows more pressing as population grows. It is fundamental, and we are of opinion that the private property of ripar-

ian proprietors cannot be supposed to have deeper roots.".

Appellants state that all that the Act of 1939 does ". . . is to interpose an obstacle to the exercise of the right of eminent domain.". If so viewed, the obstacle is a most substantial one, consisting of a determination by the Board not only that the appropriation of water and acquisition of water rights by the utility is necessary for its service to the public, but that such appropriation and acquisition may be made consistently with the conservation, control and equitable distribution of the waters of the Commonwealth in the public interest. To perform its duties in this regard obviously the Board was required to consider in the present case not only the particular stream involved, the Perkiomen Creek, but the availability of other sources of supply in order that the conservation, development and equitable distribution of water in the public interest should be effected. Nothing in the Act of 1939 expressly or impliedly prevents the Board from permitting the diversion of water from one watershed to another nor confines a water company to appropriation of waters within its franchized territory.[1] Clearly such limitations would largely negate the intent and provisions of the Act.

It plainly appeared that such a diversion would occur if the defendant's application were granted, so

---

[1] In this connection it may be noted that in *Rider v. York Haven Water and Power Company*, 251 Pa. 18, this Court stated at p. 27: ". . . A water company, invested with the power of eminent domain, can lawfully appropriate the waters of a stream outside the limits of the district for which it was incorporated, if the purpose be to supply the public in the territory where under its charter it has the right to transact its corporate business: Bland v. Tipton Water Co., 222 Pa. 285; Blauch v. Johnstown Water Co., 247 Pa. 71. . .".

that the Board was fully apprised of the nature of the diversion even before the hearings had. It is almost inconceivable that this issue was not raised at the hearings by any of the many protestants who appeared thereat in person or by counsel. The protestants included two water companies, a number of boroughs and the City of Philadelphia.[2]

For present purposes it is immaterial whether this issue was raised before the Board. The important thing is that it could have been raised, for it was within the Board's competency to consider and decide the issue. If it was not raised before the Board, nor by appeal to the court, the statutory remedies were not pursued or exhausted.

In view of what we have held to be the evident purpose of the Act, we find no merit in appellants' argument based upon the requirement that before the issuance of a permit the Board must find that the pro-

---

[2] In the petition to the Board for rehearing by various protestants, including at least 30 of the plaintiffs in the instant equity proceeding and some of the present appellants, it was stated that ". . . your petitioners believe that your Honorable Board is required to determine, weigh and pass upon the following questions or factors before granting the permit prayed for by the Philadelphia Suburban Water Company, viz.:

(a) Whether the applicant has shown a reasonable need of an increase of water supply over and above the quantity now available under existing allocations and valid condemnations and other sources held by it;

(b) Whether, if an additional quality *is* needed, it cannot be reasonably obtained and developed from sources within and riparian to its franchised territory and now controlled by it;

(c) Whether there is any impelling need to go to a stream entirely outside of its franchised territory and thereby hamper, impede and retard the development of communities within the watershed of such stream by obtaining a monopoly of such communities' needed water; . . .".

posed taking (1) will not conflict with the rights of any other public water supply agency, (2) is reasonably necessary for the present and future needs of the applicant, (3) will not interfere with navigation, (4) will not jeopardize public safety, and (5) will not cause substantial injury to the Commonwealth. It is asserted that these matters limit consideration by the Board to the interest of the Commonwealth "as a whole". Clearly the Act is not limited to the interest of the Commonwealth as an entity in the sense that it is a consumer of water in State buildings or properties, but as the title of the Act discloses, its purpose is ". . . the conservation, control and equitable use of the waters within the Commonwealth in the interests *of the people* of the Commonwealth; . . .". The Commonwealth's interest is as parens patria to provide for the needs of its people for water everywhere within its boundaries. If there is any doubt in this regard it is dispelled by resort to the preamble herein above set forth. Moreover private and quasi-private interests of individuals, corporations and municipalities can be asserted and heard, as they were in the instant case. The opportunity is afforded to present reasons why an application of a water company should not be approved, but the Board is the final arbiter unless its action is reversed upon appeal to the court.

Turning to appellants' second contention, it is claimed that Section 42 of the Administrative Agency Law of 1945, supra, expressly preserves jurisdiction in equity. This section in its entirety reads as follows: "The procedure applicable to appeals from adjudications shall be in accordance with the rules of civil procedure promulgated from time to time by the Supreme Court of Pennsylvania. A party who proceeded before an agency under the terms of a particular statute shall not be precluded *from questioning the validity of said*

*statute* in the appeal, but such party may not raise upon appeal any other question not raised before the agency, unless allowed by the court upon due cause shown. The remedy at law *provided by this section* shall not in any manner impair the right to equitable relief heretofore existing, and such right to equitable relief is hereby continued, notwithstanding the provisions of this section.". (Emphasis supplied).

We agree with the court below that this contention is untenable and we adopt the reasoning and conclusion reached in the majority opinion as follows: ". . . Admittedly, equity had jurisdiction to inquire into the problems of water supply prior to the Act of 1939. There was no other tribunal authorized to pass upon these problems. However, with the passage of this act the duty of determining these questions was delegated to the Water and Power Resources Board with the right of appeal to the Court of Common Pleas of Dauphin County. Therefore, by virtue of the Act of 1806, equity was ousted of jurisdiction. If the remedy and procedure provided by the Act of 1939 need not be followed, then it is apparent that in this respect, it is practically a dead letter. . . This section clearly adds nothing to plaintiffs' case so far as the Act of 1939 is concerned, since by 1945, the date of the Administrative Agency Law, no right to equitable relief was 'heretofore existing' upon any issue for which the Act of 1939 provided a statutory procedure and remedy. Beyond this, moreover, plaintiffs' interpretation is clearly wrong. Section 42 merely retains the right to equitable relief insofar as challenging the validity of the statute under which the agency in question is purporting to act. The first paragraph of the section contains two sentences, the first dealing with the rules of procedure applicable on appeals and the second provides that a party may challenge on appeal the validity of the very

statute under which he proceeded before the agency and to the appellate court. The reason for the inclusion of this section was to clarify the confusion which had resulted from different interpretations of the Act of 1806, in Taylor v. Haverford Township, 299 Pa. 402 (1930), and Taylor v. Moore, supra [303 Pa. 469]. In the former case the Supreme Court had held that if you proceeded to appeal under a particular statute you were precluded from attacking its validity in that proceeding. In the latter case the court indicated that this was not the law. Now it is possible to attack the validity of a statute both in equity and by the appeal procedure provided for by a specific statute. If the statute intended a broader meaning for the phrase 'equitable relief heretofore existing', there would have been no necessity for using the phrase 'The remedy at law provided by *this section*'. It would have been sufficient to state that *this* Act shall not in any manner impair pre-existing rights to equitable relief. Principles of statutory construction forbid the interpretation suggested by the plaintiffs, as it would tend to repeal the Act of 1806 to a far greater extent than the language requires. Statutes should be construed in harmony with the existing law; repeal by implication is carefully avoided by the courts. Therefore, since the plaintiffs are not challenging the validity of the Acts of 1913 or 1939, section 42 of the Administrative Agency Law does not justify this suit in equity.".

In addition to the foregoing principal contentions made by appellants, it is argued that the construction of the reservoir as part of the project will constitute a public nuisance which equity will enjoin. The complaint does not charge nuisance, but appellants point to allegations therein that there will result from such construction adverse effect upon or destruction of fish production and propagation, menace to health when the

water is at low level, destruction of historical land-marks, virtual elimination of various recreational fa-cilities, inundation of roads, the necessary relocation thereof and the building of new bridges thereon, the loss of taxable real estate, depression of the area's economy, and the placing of the lives and properties of the plaintiffs and others in constant deadly peril, fear and jeopardy of catastrophic sudden flood if the dam gives way.

Assuming that all of these predicted happenings may occur and further assuming their sufficiency as a matter of law to establish a nuisance, such or similar results, some of which may not be fully compensable in money damages, are inevitable in any water supply de-velopment involving the construction of a dam and reservoir. The impounding of water for public use is a necessity. We know of no case where a water sup-ply reservoir has been found to be a public nuisance per se. Here the Water and Power Resources Board, an arm of the Legislature, authorized the project and the exercise of the right of eminent domain for its ac-complishment. Where the Legislature has authorized an act, such act cannot constitute a public nuisance although it would otherwise be such, so long as the terms of the authorization are not abused or exceeded. *The Danville, Hazleton and Wilkesbarre Railroad Co. v. The Commonwealth*, 73 Pa. 29; *Commonwealth v. Pennsylvania Railroad Co.*, 78 Pa. Superior Ct. 389; 39 Am. Jur., Nuisance, §204, p. 480. In the *Danville* case, supra, at p. 38 it was expressly stated: ". . . A structure authorized by the legislature cannot be a public nuisance. A public nuisance must be occasioned by acts done in violation of law. A work which is au-thorized by law cannot be a nuisance: . . .".

To sustain its contention that equity has juris-diction, appellants rely upon language contained in

the opinion of the Court in *Commonwealth ex rel. Shumaker v. New York & Pennsylvania Company, Inc.*, 367 Pa. 40, 79 A. 2d 439. In that case the plaintiff sought and we upheld the issuance of an injunction to prevent stream pollution, although the Pure Streams Act of June 22, 1937, P. L. 1987, as amended, 35 PS §691 et seq., afforded an administrative procedure for the prevention of such pollution. However, Section 701 of the Act expressly preserved existing rights and remedies. There is no such preservation of remedies in the Acts of 1939 and 1913 with which we are here concerned. We regard the decision in the *Shumaker* case as grounded on the express preservation of equitable jurisdiction. This is manifested by the emphasis, through the use of italics, placed upon Section 701 of the Pure Streams Act, which, as set forth at page 50 of the opinion, reads as follows: ". . . *It is hereby declared to be the purpose of this act to provide additional and cumulative remedies to abate the pollution of the waters of this Commonwealth, and nothing in this act contained shall in any way abridge or alter rights of action or remedies now or hereafter existing in equity, or under the common law or statutory law, criminal or civil, nor shall any provision in this act, or the granting of any permit under this act, or any act done by virtue of this act, be construed as estopping the Commonwealth, persons or municipalities, in the exercise of their rights under the common law or decisional law or in equity, from proceeding in courts of law or equity to suppress nuisances, or to abate any pollution now or hereafter existing, or enforce common law or statutory rights.*".

It is true that after this recital of Section 701 of the Act, the opinion proceeds to add the language relied upon by the appellants: ". . . But even without this provision because of the grave menace to the public

interest arising from corruption of waters affecting as it does the health, welfare and comfort of the public, including industries which cannot exist without a plentiful supply of clean water, we have always refused to accept statutes outlawing pollution as restricting the common law right to abate stream pollution.". But at the end of the discussion of the view thus expressed, the opinion states: ". . . *However this may be* [emphasis supplied] the legislature in no uncertain terms made it plain by sec. 701 that the Act of 1937 was not intended to be an exclusive remedy but only an *additional* remedy to meet what is now recognized as a grave menace to our modern civilization.". We think it plain that the decision is based upon the express preservation of equitable jurisdiction contained in the Pure Streams Act. Moreover, there is a very great difference between the intervention of a court of equity under the circumstances presented in the *Shumaker* case to prevent *harm to the public* caused by the pollution of a stream of water, and an intervention which would obstruct or prevent the conservation, control and equitable distribution of the waters of the Commonwealth for the *benefit of the public*—a function properly vested in a legislative agency with State-wide jurisdiction. In the former instance, the court is acting in consonance with the statutorily declared policy and purpose of the Legislature; in the latter instance, contrary to it. To hold that a court may interfere with or override an adjudication by the Water and Power Resources Board concerned with the allocation of waters in the public interest, except upon review on appeal, would destroy the legislative creation of unified supervision and control of the supply of a necessity of life. Such regulation is for the sovereign in the first instance, not for the judiciary.

It is a reasonable assumption that all the elements of the alleged resultant harm to appellants and others were pressed at the extensive hearings before the Water and Power Resources Board and were considered by it. If any were not presented, they could have been. The Board was the appellants' exclusive forum, with the right of appeal to the court. Appellants admit that they did not exhaust the remedies available under the Acts of 1939, 1913 and the Administrative Agency Law of 1945, and we are of the opinion that the court below properly refused to exercise equitable jurisdiction.

Decree affirmed at the cost of appellants.