## Snyder v. Oestreich

*I. L. Mazer*, for plaintiffs.

*A. J. Bader*, for defendant.

LEVINTHAL, J., December 13, 1956. — Plaintiffs, three optometrists and an association of practicing optometrists, simultaneously commenced separate actions in equity against six practicing optometrists seeking injunctive relief against conduct which they allege constitutes the practice of optometry in an unlawful manner. The complaints are practically identical and raise common questions of law. Since the first action (no. 2720 of June term, 1956) was assigned to this court, the other actions have been transferred here. We have before us defendant's preliminary objections to one of these complaints.

The complaint alleges that defendant practices optometry at 1233 West Erie Avenue, Philadelphia, and that the Erie Optical Company conducts an optical business at Broad and Venango Streets in the same neighborhood. According to the complaint, defendant is not engaged in the "independent practice" of optometry, but, instead, "depends upon" referrals of patients by Erie Optical Company and, in turn, directs all patients to have their prescriptions filled by Erie Optical Company. Plaintiffs allege that defendant's participation in this "system" of reciprocal referrals constitutes the practice of optometry in an unlawful manner, in that it places defendant under the "effective control" of Erie Optical Company, aids and abets

Erie Optical Company in practicing optometry without a license and permits Erie Optical Company fraudulently to represent to the public that it offers complete eye care, including examination of the eyes. Plaintiffs allege that defendant's conduct diminishes the value of their optometry practices and degrades their profession in the eyes of the public. They seek an order restraining defendant from accepting referrals of patients from Erie Optical Company and from directing all of his patients to have their prescriptions filled by that company. The Erie Optical Company has not been joined as a party to the action, and no relief is sought against it.

The preliminary objections consist of a motion for a more specific pleading, a demurrer, an objection to the nonjoinder of Erie Optical Company as a necessary party and a motion to dismiss the action on the ground that plaintiffs have not exhausted the statutory remedy provided by the Act of March 30, 1917, P. L. 21, as amended, 63 PS §231 et seq., which vests jurisdiction to hear and dispose of charges of professional misconduct by licensed optometrists in the State Board of Optometrical Examiners.

A brief review of the legislation and prior litigation in this area of the law may help to clarify the questions raised by these objections and our ruling on them.

In 1911 the legislature imposed upon the right to practice medicine and surgery within the Commonwealth a system of regulation based upon licensure: Medical Practice Act of June 3, 1911, P. L. 639, 63 PS §401, et seq. The practice of pharmacy, dentistry and osteopathy were expressly exempt from the operation of the act. In 1914 the Bureau of Medical Education and Licensure, established by the Act of 1911, undertook to bring optometrists within the class of persons who were required to obtain licenses from the

bureau. The Supreme Court in Martin v. Baldy, 249 Pa. 253 (1915), held that the Act of 1911 was not intended to apply to optometrists since their services do not constitute the practice of medicine or surgery. Thereafter, by the Act of March 30, 1917, P. L. 21, 63 PS §231, et seq., the legislature imposed a separate and independent system of licensure upon the right to practice optometry.

The Act of 1917 in general followed the scheme of regulation of the Act of 1911. Section 1 of the act defines "optometry". Section 2 makes it a misdemeanor for an unlicensed person to practice optometry or to hold himself out as a practitioner of optometry. Section 3 of the act established a Board of Optometrical Education, Examination and Licensure with power to enforce the provisions of the act.

Section 9 vests in that body, now called the State Board of Optometrical Examiners, power to hear and dispose of charges of professional misconduct brought against licensed optometrists. Under section 9, as amended, the board may suspend or revoke licenses for any of the following reasons: Peddling from house to house or person to person, establishment of temporary offices, use of misleading advertising, gross incompetency, obtaining money by fraud, misrepresentation of the optometrical profession, failure to deliver certificates provided for in section 6 of the act, conviction of a crime involving moral turpitude, habitual intemperance in the use of substances which impair the intellect and judgment and advertising prices for professional services or glasses. Section 9 also states that the license of any person convicted of a violation of section 2 of the act, which makes it a misdemeanor for an unlicensed person to practice optometry, shall be ipso facto revoked. Finally, section 15 of the act contains a statement of legislative intention that the act "shall fur-

nish a complete and exclusive system, of and in itself, for obtaining the right to practice optometry . . . and for the regulation of the practice of optometry. . . ."

In Harris v. State Board of Optometrical Examiners, 287 Pa. 531 (1926), the Supreme Court upheld the board's action in revoking an optometrist's license for peddling eyeglasses from door to door and for practicing optometry away from his place of business. In Neill v. Gimbel Brothers, Inc., 330 Pa. 213 (1938), the Supreme Court held that optometry is a profession, and that, consequently, an unlicensed person or corporation may be enjoined from practicing optometry indirectly by the employment of licensed optometrists to examine the eyes of its customers. In Neill v. Chaby, etc., 86 D. &. C. 457 (1953), certain optometrists, who are members of a different professional group from the group which is represented here, obtained an order enjoining the owner of Erie Optical Company (the same company which is named, although not made a party, in the present complaint) from holding himself out as an optometrist, from employing an optometrist to practice for him as his agent, servant, lessee or concessionaire, and from entering into any relationship with an optometrist whereby defendant recommended the optometrist to customers in return for any consideration or gratuity, including a counter referral to defendant. The optometrists who were "employed" by Gimbel Brothers and Chaby were not joined as parties in those actions.

Our research has not disclosed any case in which equity has undertaken to enjoin a licensed practitioner from practicing a profession which the legislature has sought to regulate by a system of licensure. There can be no doubt of our jurisdiction to enjoin unlicensed persons from practicing such professions. See Boggs v. Werner, 372 Pa. 312 (1953). However, we doubt

that such jurisdiction should be exercised to control the conduct of a practitioner whose license has not been suspended or revoked by the board which controls licensure. It appears to us that the scheme of regulation enacted here gives the licensing board exclusive authority over charges against licensed persons and that it contemplates the exercise of equity jurisdiction only over unlicensed persons.

It has been held that the medical board may revoke a physician's license for aiding and abetting an unlicensed person to practice medicine: Pennsylvania State Board of Medical Education and Licensure v. Ferry, 172 Pa. Superior Ct. 372 (1953). The board in that case acted under a provision of the Medical Practice Act which authorizes revocation upon satisfactory proof of " 'grossly unethical practice, or of any form of pretense which might induce citizens to become a prey to professional exploitation.' " Whether or not such conduct authorizes revocation of a license to practice optometry is not clear, since "grossly unethical behavior" is not specified as one of the grounds for revoking optometry licenses. The act does specify several general grounds, such as "gross incompetency", for example, which may include such conduct. If it should be held that aiding and abetting an unlicensed person to practice optometry is not ground for revocation, it would seem that plaintiffs' efforts should be directed towards obtaining relief from the legislature. We think it is clear that a court of equity should not seek to impose conditions or restrictions upon a license which the legislature has not seen fit to impose.

In our opinion the regulatory statute gives the licensing board exclusive authority to hear and dispose of charges brought against licensed optometrists; it contemplates an exercise of equity jurisdiction over such persons only in the event their licenses are sus-

pended or revoked. A court of equity should not undertake to control the practice of a licensed practitioner on the ground that it is thereby preventing an unlicensed person from practicing the profession, at least in cases such as this, where it appears that the unlicensed person may be effectively controlled in an action brought directly against him. A contrary holding might conceivably result in the formulation of varying standards of professional conduct in different counties, some consistent with and others inconsistent with standards formulated by the board for the entire profession.

The Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, sec. 13, states that: "in all cases where a remedy is provided or duly enjoined, or any thing directed to be done by any act or acts of Assembly of this commonwealth, the directions of said acts, shall be strictly pursued. . . ." The effect of the act is to render equity unavailable where prescribed statutory remedies have not been exhausted. See Collegeville v. Phila. Sub. Water Co., 377 Pa. 636 (1954). We think that act is applicable here.

Since we have decided that the present action should be dismissed, we do not consider the motion for a more specific pleading, the demurrer or the objection to the nonjoinder of Erie Optical Company as a party. However, it should be noted that the joinder of Erie, which we could compel by virtue of Pa. R. C. P. 2232(c), would not in our opinion solve the difficulty inherent in this action. If Erie were made a party, we would be inclined to restrict any relief granted to an injunction against Erie, on the ground that any discipline or restriction imposed upon a licensed optometrist should be administered by the board and not by a court of equity.

Defendant's fourth preliminary objection to the complaint is sustained. The action is dismissed.