## Pennsylvania Life Insurance Company, Appellant, v. Pennsylvania National Life Insurance Company.

Argued November 18, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

 reargument refused April 15, 1965.

*Israel Packel,* with him *Nathan L. Posner, Franklin A. Wurman,* and *Fox, Rothschild, O'Brien and Frankel,* for appellant.

*Theodore S. Gutowicz,* with him *J. V. Wherry,* for appellees.

OPINION BY MR. JUSTICE JONES, March 16, 1965:

This appeal arises from a decree of the Court of Common Pleas No. 7 of Philadelphia County dismissing a bill in equity. Pennsylvania Life Insurance Company [Pennsylvania Life], a domestic life insurance company organized under the laws of Pennsylvania, brought a bill in equity against the Pennsylvania National Life Insurance Company [Pennsylvania National], also a domestic life company organized under Pennsylvania law, and two other insurance companies (domestic fire and casualty companies), seeking to restrain and enjoin Pennsylvania National and its codefendants from "engaging in the life insurance business under the name of PENNSYLVANIA NATIONAL LIFE INSURANCE COMPANY or any other *name* deceptively similar to that of [Pennsylvania Life]."

Pennsylvania Life has been engaged in the business of selling life, as well as health and accident, insurance in Pennsylvania since 1954 and has five offices in the State with approximately fifty salesmen and millions of dollars of coverage in force. Prior to the incorporation of Pennsylvania National in 1962, objections were filed with the Insurance Department of Pennsylvania by Pennsylvania Life and the Penn Mutual Life Insurance Company claiming that the proposed name was deceptively similar to their own names. A formal hearing was held, on April 18, 1962, before a deputy insurance commissioner and testimony thereat was taken concerning the objections. Subsequently, on July 3, 1962, the insurance commissioner filed an adjudication declaring that the name did not closely resemble that of any existing company so as to confuse or mislead the public. Pennsylvania National was then incorporated and has been doing business ever since.

On July 26, 1962, the present equity action was filed and a final hearing held on December 12, 1962.

On October 9, 1963, the Court of Common Pleas No. 7 of Philadelphia County filed a decree dismissing the action and holding that the sole remedy was a statutory appeal provided by §41 of the Administrative Agency Law (Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.41). Pennsylvania Life filed exceptions and the court en banc, on March 2, 1964, found that there was evidence to support the allegation of confusion but affirmed the chancellor on the ground that the availability of a statutory remedy precluded the equity proceeding. It is from the decree dismissing the action that this appeal was taken.

Our initial inquiry is whether a court of equity can exercise its jurisdiction in the instant factual situation. Section 204 of the Insurance Company Law of 1921 (Act of May 17, 1921, P. L. 682, §204, 40 P.S. §384), provides, inter alia: "The Insurance Commissioner may prohibit the use of any name, when, in his judgment, it too closely resembles that of any existing company or is likely to confuse or mislead the public." Although not mandatory, a hearing was held in the case at bar, as we have stated, pursuant to the Administrative Agency Law (Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.1-1710.51). Section 41 of the Administrative Agency Law, supra, provides, inter alia: "APPEALS—Within thirty days after the service of an adjudication . . . any person aggrieved thereby who has a direct interest in such adjudication shall have the right to appeal therefrom. Such appeal shall be taken to the court of Common Pleas of Dauphin County." The crucial question before us is whether Pennsylvania Life's failure to pursue this statutory appeal precludes this subsequent equitable action. We hold that it does.

The Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, §13 (46 P.S. §156) provides: "In all cases where a remedy is provided, or duty enjoined, or anything di-

rected to be done by any act or acts of assembly of this Commonwealth, the directions of the said acts shall be strictly pursued. . . ." In commenting on this statute, Chief Justice KEPHART stated in *Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania,* 332 Pa. 15, 23, 24, 1 A. 2d 775: "It is well settled [under the Act of 1806] that where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued, to the exclusion of other methods of redress [citing cases]." It is well established that a court of equity will not invoke its jurisdiction where there is an adequate remedy at law and that statutory remedies, if adequate, must be exhausted before equitable jurisdiction may be resorted to: *Collegeville Borough v. Philadelphia Suburban Water Co.,* 377 Pa. 636, 105 A. 2d 722.

In *Collegeville Borough,* supra, there were nine boroughs, six townships and thirty-eight individuals and corporations who brought an equity action in the Court of Common Pleas of Montgomery County against the Philadelphia Suburban Water Company [Water Company] to enjoin the Water Company from erecting a dam across and diverting water from Perkiomen Creek. The Water Company had filed an application with the Water and Power Resources Board (Board) to increase its water allocation from the creek. A hearing was held, the application approved and an appeal taken to the Court of Common Pleas of Dauphin County pursuant to the Administrative Agency Law, supra. The appeals were terminated in the form of a consent decree by the court allowing an amended permit. Some months later, a petition was filed asking the Board to reopen the proceeding, which petition was dismissed for failure to show any new matter or that new or changed conditions had arisen. No appeal was taken therefrom. Subsequently, the Water Company filed an application with the Board for permission to construct

a dam on Perkiomen Creek. After a hearing, the application was approved. No appeal was taken from this adjudication and order. It was this implementing application to construct the dam which triggered the suit in equity. The court en banc of Montgomery County dismissed the action, holding that equity could not exercise its jurisdiction, the parties having failed to exercise or exhaust statutory procedures and remedies available to them. In affirming, this Court stated (377 Pa. at 644) : · "Some of them [the appellants] did in fact appear, but none appealed from the final decision of the Board. Such an appeal to the Dauphin County Court was provided for and available. Thus all of the plaintiffs in the equity action either failed to pursue or to exhaust the statutory remedies afforded them."

When the legislature set up the Administrative Agency Law, supra, it provided for a uniform and comprehensive method of appeal from a decision of an administrative agency. Where such a provision is made for direct appeal to a court from an administrative decision, such procedure should be followed. 73 C.J.S. Public Administrative Bodies and Procedure §167. Such a policy insures orderly procedure.[1]

Equity will afford relief if the statutory remedy is inadequate or its pursuit would work irreparable harm: *Philadelphia Life Insurance Co. v. Commonwealth,* 410 Pa. 571, 190 A. 2d 111. The facts of the case at bar are not such that justice would require departure from the previously noted rules of equitable jurisdiction. Had an appeal to the Dauphin County Court of Common Pleas resulted in a reversal of the Insurance Commissioner and the names found to be deceptively similar, Pennsylvania National would have been prevented from incorporating and doing business

---

[1] Cf. 2 P.L.E. §62; 2 Am. Jur. 2d Administrative Law §595.

under its present name. This is exactly the end sought by this action. Had the statutorily provided remedy been pursued, it could have been complete and adequate and no irreparable harm would have arisen.

The appellant argues that the legislature only intended to protect the public from injury because of similar names. This contention is rebutted by the statute itself (40 P.S. §384) which provides that the Commissioner may prohibit a name when "it too closely resembles that of any existing company *or* is likely to confuse . . . the public." (Emphasis added). This clearly indicates that private as well as public rights are protected. Relying on *Consolidated Home Specialties Co. v. Plotkin,* 358 Pa. 14, 28, 29, 55 A. 2d 404, appellant asserts that merely because an administrative agency authorizes the use of a corporate name, this is not res adjudicata on the question of whether the names are deceptively similar. In *Consolidated,* the names were authorized by the Department of State. The Business Corporation Law (Act of May 5, 1933, P. L. 364, §202, as amended, 15 P.S. §2852-202) which governs the formation of most domestic corporations, specifically provides that a corporate name shall not imply that the corporation is "subject to the supervision . . . of the Insurance Department." The Department of State, in authorizing a corporate name, determines only whether the name is *identical* to that of an existing corporation and the question of similarity is not considered by it. The Insurance Company Law, supra, specifically requires the question of *similarity* to be determined by the Commissioner. Therefore, while sound on its own facts, *Consolidated* is inapplicable here.

Finally, it is asserted that equitable remedies are specifically preserved by §42 of the Administrative Agency Law, supra, 71 P.S. §1710.42. This contention was specifically dealt with in *Collegeville Borough v.*

*Philadelphia Suburban Water Co.,* supra, in which this Court stated, 377 Pa. at 653: "Section 42 [of the Administrative Agency Law] merely retains the right to equitable relief insofar as challenging the validity of the statute under which the agency in question is purporting to act."

Decree affirmed. Costs on appellant.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

To hold, as a majority of the Court does, that equity is without jurisdiction to act in this case is to erroneously over-emphasize the permissive statutory administrative discretion vested in the Insurance Commissioner.

The weight of authority seems to clearly indicate that, despite the presence of a statute under which the state can prevent the use of a corporate name because it is not readily distinguishable from that of another corporation, an executive determination that the name is not confusingly similar does not ordinarily preclude injunctive relief sought by an injured corporation. E.g., 6 Fletcher, Cyclopedia Corporations §2426, at 52 (perm. ed. rev. vol. 1950); 66 A.L.R. 1015 (1930); *Standard Oil Co. of New Mexico v. Standard Oil Co. of California,* 56 F. 2d 973, 975 (10th Cir. 1932).[1]

---

[1] Accord, *Drugs Consolidated, Inc. v. Drug Incorporated,* 16 Del. Ch. 240, 144 Atl. 656 (1929); *Middletown Trust Co. v. Middletown Nat'l Bank,* 110 Conn. 13, 147 Atl. 22 (1929); *Most Worshipful Prince Hall Grand Lodge v. Most Worshipful Hiram Grand Lodge,* 85 Colo. 17, 273 Pac. 648 (1928); *Diamond Drill Contracting Co. v. International Diamond Drill Contracting Co.,* 106 Wash. 72, 179 Pac. 120 (1919); *Young & Chaffee Furniture Co. v. Chaffee Bros. Furniture Co.,* 204 Mich. 293, 170 N.W. 48 (1918); *General Film Co. of Mo. v. General Film Co. of Me.,* 237 Fed. 64 (8th Cir. 1916); *Material Men's Merc. Ass'n v. N. Y. Material Men's Merc. Ass'n,* 169 App. Div. 843, 155 N.Y. Supp. 706 (1915); *Eureka Fire Hose Co. v. Eureka Rubber Mfg. Co.,* 69 N.J. Eq. 159, 60 Atl. 561 (1905), aff'd, 71 N.J. Eq. 300, 71 Atl. 1134 (1906); *Knights of*

The majority predicates its conclusion on the premise that equity will not act where there is an adequate remedy at law. That, of course, is an established and correct principle. But the majority finds an adequate remedy at law because the Insurance Commissioner *may* prohibit the use of a name which, in his judgment, too closely resembles an existing name and because an appeal may be taken from his determination. What this view fails to take into account, however, is that the Commissioner determines, within his own judgment and discretion, whether he will act at all. It is difficult to find the comprehensive scheme of protection which the majority posits when there is a candid admission that a hearing is not even mandatory.

On the merits of the case, the record abounds with evidence to support the conclusion reached by the court below, sitting en banc, that the name "Pennsylvania National Life Insurance Company" is confusingly similar to "Pennsylvania Life Insurance Company".[2]

---

*the Maccabees of the World v. Searle*, 75 Neb. 285, 106 N.W. 448 (1905) ; *Ohio Nat'l Life Ins. Co. v. Ohio Life Ins. Co.*, 188 N.E. 2d 324 (Ohio C.P. 1961).

[2] The majority of the court en banc, in dealing with the merits of this controversy, significantly observed: "We respectfully submit that an abundance of evidence has been produced to support plaintiff's allegation of confusion.

"The corporate name 'Pennsylvania National Life Insurance Company' adopted by one of the defendants is strikingly similar to the corporate name 'Pennsylvania Life Insurance Company' of the plaintiff. While the word 'National' distinguishes the two names, nevertheless it is the placement of the words in the two corporate names that creates confusion. Each corporate name begins with the word 'Pennsylvania' and each corporate name includes the words 'Life Insurance Company'. We do not feel that the insertion of the word 'National' between the words 'Pennsylvania' and 'Life' by the defendant sufficiently alerts the public to the distinction between the two corporations. It is the sequence of the words

The unwarranted rejection of equitable assistance in the face of the findings on the merits completely ignores the traditional and well-understood remedial function of equity to render the administration of justice more complete and adequate. The unnecessary preclusion of equity here seems all the more regrettable because it appears but another step in this Court's recent unwise and ill-founded tendency to constantly diminish and narrow the scope of equity's jurisdiction. It is indeed lamentable that the equitable phase of our jurisprudence, a phase especially designed to supply specific and preventive redress, should be needlessly denied to litigants who conclusively establish the requisites for such relief.

I dissent and would reverse the decree dismissing the complaint and would direct the court below to exercise its equitable powers in affording plaintiff appropriate and suitable equitable protection.

Mr. Chief Justice BELL joins in this dissenting opinion.

---

in the defendant's corporate name that confuses it with the plaintiff's corporate name. Had the defendant, for example, chosen the name 'National Life Insurance Company of Pennsylvania', it would have had the same words in its corporate name but in different sequence and in such case the first word of the plaintiff's corporate name would be 'Pennsylvania' and the first word of the defendant's corporate name would be 'National' and we are of the opinion that no cause for confusion on the part of the public would exist."